# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 7 |
| | ) |
| I.E. LIQUIDATION, INC., | ) CASE NO. 06-62179 |
| | ) |
| Debtor. | ) ADV. NO. 08-6077 and 08-6078 |
| | ) |
| I.E. LIQUIDATION, INC., | ) JUDGE RUSS KENDIG |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT INTENDED FOR** |
| LITOSTROJ HYDRO, INC., | ) **PUBLICATION)** |
| | ) |
| Defendant. | ) |

    Now before the Court are the motions to dismiss filed by Defendant Litostroj Hydro, Inc. ("Defendant" or "Litostroj") in two adversary proceedings, 08-6077 and 08-6078 (both otherwise captioned identically), brought by Plaintiff I.E. Liquidation, Inc. ("Plaintiff" or "Debtor").[1] Debtor filed both adversary proceedings in this Court on June 20, 2008, each containing an objection to a claim Litostroj filed against Debtor, as well as a claim for damages against Litostroj based on breach of contract. Litostroj objects that this Court is not the proper venue for the resolution of these disputes. For the reasons set forth in the accompanying memorandum of opinion, the Court grants Litostroj's motions.

    The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. 157(b)(2)(B) and (O). The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

    This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

---

[1] These adversaries have not been consolidated. However, because the legal arguments pertaining to Litostroj' motions to dismiss overlap in relevant part, and because of the identity of the parties, the Court enters this single opinion on both motions. The Court emphasizes that this is for administrative convenience because of sufficient commonality of facts material to the motions to dismiss. The nuclei of operative facts with respect to the transactions and contracts being litigated, however, are distinct, and these cases remain unconsolidated.

## FACTUAL AND PROCEDURAL BACKGROUND

Ideal Electric Company ("Ideal"), the f.k.a. identity of Debtor I.E. Liquidation, Inc., was a manufacturer of medium power generators for gas, steam, and hydroelectric turbines, as well as diesel engines up to 20 MVA. Its corporate and operations center was located in Mansfield, Ohio, where Debtor remains. Michael Vucelic ("Vucelic") served as president and CEO of Ideal and has been retained by Debtor.

Litostroj is a Canadian company headquartered in Bromont, Quebec, Canada. Janez Dornik ("Dornik") was its president at all relevant times for the events underlying this litigation.

Hydro Quebec is a Canadian utility company also headquartered in Canada.

The first adversary centers upon a contract under which Hydro Quebec awarded a general contract to Litostroj, which in turn awarded a subcontract to Ideal to manufacture a dozen hydroelectric generators for installation at Chute Allard and Rapides de Couers. The second centers upon a separate contract for a single generator for installation at Besy, which Ideal likewise undertook at Litostroj's behest, but in which the owner was AbitibiBowater, a Delaware corporation with its principal place of business in Montreal.

### A. The Chute Allard and Rapides des Coeurs Project

In early 2005, Hydro Quebec solicited bids to provide equipment for two power generating sites, Chute Allard ("CA") and Rapides des Coeurs ("RDC"). Two bidders on the project were Litostroj and Voith Siemens, a company for which Ideal had been a subcontractor for previous projects for Hydro Quebec. Hydro Quebec selected Litostroj's bid, but requested that Ideal supply the generators for these projects. Litostroj therefore approached Ideal to supply a total of twelve generators for the two projects.

On July 5, 2005, Ideal and Litostroj signed two purchase orders (Exs. A and B to Def.'s Mot. to Dismiss), substantially identical, one for six generators for the CA project and the other for a like quantity for the RDC project. Each purchase order states a total contract price of $8,536,838, for a total of $17,073,676.[2] The major components of this price included approximately $1.6 million for the initial drawings, $13.9 million for the manufacture and testing of the generators, and the balance of $1.8 million for special tools and parts, manuals, transportation, installation supervision, and testing. The contract also provided for a 20% withholding of amounts due in lieu of a performance bond, and possibly another 10% withholding on the total contract price in connection with the warranty. The manufacturing and testing phase was thus the largest component of the contract price, by a considerable margin. Because a project of this magnitude was a major undertaking for Ideal, Ideal anticipated periodic payments on its work throughout the manufacturing cycle.

According to Ideal, payment for the drawings was first delayed, and later tendered only in part–Litostroj allegedly withheld the applicable withholding amounts ($426,257) and

---

[2] Plaintiff's Complaint in Adv. No. 08-6077 states a higher figure of $17,315,957; the Court need not reconcile this difference at this stage.

never tendered the balance to Ideal at the conclusion of the contract. In addition, Litostroj was not forthcoming with the substantially greater sums due as periodic payments under the manufacturing and testing components of the purchase orders, and as of the petition date (as well as the date of the Complaint in this adversary) had not made a single payment to Ideal for any of its manufacturing work on the generators for CA and RDC. Debtor alleges that the financial pressure fostered by Litostroj's refusal to make periodic progress payments under the purchase orders was a major reason for the company's bankruptcy.[3]

### B. The Besy Project

Also in 2005, Ideal and Litostroj entered into a contract under which Ideal would design and build a type "SAVB" Vertical Brushless Synchronous Generator for a project at Besy, to be owned by AbitibiBowater. The design-build contractor for the project was a company called Cegerco, Inc., which Defendant submits is a Canadian corporation with its principal place of business in Chicoutimi, Quebec, Canada.

Litostroj agreed to a contract price of $1,200,000. Ideal manufactured and delivered the generator; to date, Litostroj has paid nothing toward the contract price of this generator.

### C. Procedural Posture

Plaintiff is the debtor-in-possession in the case under title 11. Plaintiff filed for bankruptcy under chapter 11 of title 11 on October 29, 2006. Among other assets, Schedule B listed an account receivable from Litostroj in the amount of $485,700.00. It also listed, on Schedule F, an unsecured nonpriority debt to Litostroj identified as contingent, unliquidated, and disputed.

On March 20, 2007, Litostroj filed two proofs of claim, designated Claim Nos. 131 and 132 in the underlying chapter 11 case. Claim #131 asserts a claim against Plaintiff for breach of contract and related damages arising from the Hydro Quebec general contract in an amount not less than $5,366,315. Claim #132 asserts a claim against Plaintiff for breach of contract and related damages arising from the Besy contract in an amount not less than $1,547,513. Litostroj asserts that both claims are secured by rights of setoff.

Plaintiff filed both of the instant adversary proceedings, designated Adv. Nos. 08-6077 and 08-6078, against Defendant on June 20, 2008. In each complaint, Plaintiff alleges breach of contract against Litostroj, claiming that it performed its obligations under the respective contracts and that Litostroj breached by withholding its promised payments. Each complaint also contains an objection to the respective claim Litostroj filed with respect to that transaction against Debtor's estate.

In addition to disallowance of Claim #131, Plaintiff's complaint in Adv. No. 08-6077 seeks damages of not less than $11,000,000; in addition to disallowance of Claim #132, Plaintiff's complaint in Adv. No. 08-6078 seeks damages of not less than $485,750.

---

[3] As Defendant has not yet filed an answer, adjudicating the truth of these claims is both unnecessary and inappropriate.

With respect to the CA & RDC projects, Plaintiff also alleges breach of an implied covenant of good faith and fair dealing, alleging that Defendant's actions deliberately sabotaged Ideal, that Defendant unilaterally changed the payment terms of the contract, that Defendant failed to give Ideal reasonable, customary assistance in meeting Hydro Quebec's requirements for the projects, that Defendant interfered with Ideal's ability to perform under the contract by limiting access to Hydro Quebec staff and miscommunicating information as a go-between, and that Defendant made misrepresentations to Ideal about the project and Ideal's performance, needlessly delaying and increasing the expense to Ideal in performing and allowing Defendant pretexts for claiming nonperformance.

Finally, also with respect to the CA & RDC projects, Plaintiff brings a count of unjust enrichment, based on the allegation that after the contract between Litostroj and Ideal was terminated, Litostroj entered into a new contract with Hydro Quebec using Litostroj's preferred subcontractor, a Litostroj affiliate, which resulted in greater profit to Litostroj than the original general contract with Hydro Quebec would have. Plaintiff alleges that Litostroj's retention of this additional profit is a form of unjust enrichment.

On September 30, 2008, Defendant filed the instant motions to dismiss, one in each adversary proceeding. With respect to Adv. No. 08-6077, related to the Hydro Quebec project at Chute Allard and Rapides des Coeurs, Defendant bases its motion on two independent grounds: a forum selection clause and the doctrine of *forum non conveniens*. The forum selection clause was part of the general contract between Hydro Quebec and Litostroj, which Litostroj argues was in turn integrated into the subcontract between Litostroj and Ideal. The Besy project did not occur under the auspices of the general contract with Hydro Quebec, so with respect to Adv. No. 08-6078, Defendant bases its motion solely on the basis of *forum non conveniens*.

The forum selection clause in the Hydro Quebec contract (designated by the parties as the "Tender Documents") is in French, and provides as follows:

> Les parties conviennent que le contrat a été conclu à Montréal et est soumis aux lois qui s'appliquent au Québec, et que toute poursuite judiciaire y afférente doit être intentée dans le district judiciaire de Montréal.

This Court lacks French speakers of its own, but the following English translation of the above clause was performed by Technical Translation Services, a firm retained by Defendant, and Plaintiff contests only its applicability and enforceability, not its accuracy:

> The parties agree the contract has been executed in Montreal and is subject to the laws of the province of Quebec and any judicial procedure will be undertaken in the Montreal court system.

In turn, the two contracts between Ideal and Litostroj (the "Purchase Orders") each included a page entitled "List of contractual documents." This list, initialed by both Vucelic and Dornik, enumerated a list of documents that "are part of the contract between Litostroj Hydro, Inc. and Ideal Electric Company." (Def.'s Ex. 1, 3.) The second item on this list is "Hydro-Quebec Tender documents including all addenda 1 through 7."

On November 11, 2008, Plaintiff filed a combined response to both motions to

dismiss. Plaintiff contends that the multi-factor test for improper venue *forum non conveniens* does not favor dismissal in either case, and that the forum selection clause in the contract between Hydro Quebec and Litostroj was outside the scope of the integration of the Hydro Quebec tender documents into the agreement between Ideal and Litostroj, and is therefore sterile ground for an objection to venue.

On December 12, 2008, Defendant filed separate replies to the combined response, one in each adversary.

## LEGAL ANALYSIS

### I. Introduction

The forum selection clause was incorporated into the terms of the parties' agreement with respect to the CA and RDC projects via the Purchase Orders, as the "List of contractual documents" stated that the Hydro Quebec tender documents–the prime contract–were "part of" the parties' agreement, and neither that list nor any other component of the Purchase Orders or any incorporated document contained language that would limit the scope of the incorporation. The clause is also enforceable because parties attempting to escape enforcement of such clauses carry a heavy burden, and Plaintiff cannot carry that burden.

In addition, the doctrine of *forum non conveniens* favors dismissal in both adversaries. Evaluating whether dismissal under *forum non conveniens* is warranted involves weighing a considerable number of factors, public and private. In this case, however, one factor carries considerably more weight than the others: the courts of Montreal are bilingual in French and English. The facts of this case give this factor disproportionate salience. Another factor of considerable weight in the Court's analysis is the greater advantage Quebec's compulsory process will offer than that of this Court.

### II. Incorporation of the Forum Selection Clause from the Hydro Quebec Transaction

#### A. Incorporation

The first issue before the Court is whether the forum selection clause was incorporated into the agreement between Plaintiff and Defendant. Plaintiff contends that the Purchase Orders were only incorporated into the parties' agreement to the extent that they related to Ideal's manufacture of the generators, the scope of the project, the specifications and the quality and manner of work. Defendant, by contrast, contends that the Purchase Orders' incorporation of the Hydro Quebec tender documents was not so limited, and included general terms and conditions as well as all the requirements which Plaintiff contends were incorporated.

An unambiguous contract is not open to construction and must be enforced as written. Federal Ins. Co. v. The Hartford Steam Boiler Inspection and Ins. Co., 415 F.3d 487 (6th Cir. 2005). The language of incorporation in this contract does not contain express limiting language. The "List of contractual documents" enumerated in each Purchase Order is a list, in priority order, of the documents that "are part of the contract between Litostroj Hydro and Ideal Electric Company." The list is in priority order. The first item on the list is the request for proposal (RFP), upon which no party to this litigation is basing any argument in the

matter at hand. The second item on the list reads, in its entirety, "Hydro-Quebec Tender documents including all addenda 1 through 7." There is therefore no express limitation on the scope of the incorporation of the Tender Documents.

In Roberts & Schaefer Co. v. Merit Contracting, Inc., 99 F.3d 248 (7th Cir. 1996), the Seventh Circuit held a forum selection clause incorporated by reference in a purchase order to general terms and conditions in an accompanying document binding upon a subcontractor, notwithstanding the inconvenience that the subcontractor, a Pennsylvania firm, would face litigating in Cook County, Illinois and the fact that the subcontractor had not signed the document containing the general terms and conditions, including the forum selection clause. The subcontractor in that case, like Ideal in this case, had objected to and renegotiated other terms of the proposed contract before assenting to it but had not expressed any objection to the prime contractor regarding the forum selection clause. The facts in Roberts & Schaefer are admittedly distinguishable from the facts at bar in that the incorporated language there was not language from the contract between the prime contract and the owner, but was rather language devised by the prime contractor itself. However, it does not appear that this makes any legal difference. The parties in this case expressly agreed that the prime contract was not only incorporated, but was the second-highest priority item on the "List of contractual documents." Litostroj sent Ideal a copy of the Tender Documents with Litostroj's initial request for proposal (RFP); these documents were admittedly voluminous (they were provided on CD-ROM, and the hard copy fills four large binders), but Ideal was aware of this from the time Litostroj contacted it about working on the CA and RDC projects. It was well within its rights to bargain for other dispute resolution procedures, and it did not do so. Defendant has called the Court's attention to another case in which a subcontractor was held bound by a forum selection clause in a general contract incorporated into a subcontract even in the presence of a contradictory forum selection clause in the subcontract, where a provision in the subcontract provided that the dispute resolution procedures of the prime contract would control any dispute involving any aspect of the prime contract or the correlative rights and duties of the owner. Manganaro Corp. v. Jefferson at Penn Quarter, L.P., No. 04-2133, 2005 U.S. Dist. LEXIS 35714, at *10. The Court need not consider what it might hold in the presence of a contradictory forum selection clause in the instant case, however; there is none. Manganaro does resemble this case in the unqualified language used to incorporate the terms of the prime contract into the subcontract, however: "Subcontractor shall be bound by all the terms of the [Prime] Contract . . . and all such terms, obligations and provisions of the [Prime] Contract are hereby inserted and incorporated into this subcontract as fully as though copied herein." Id. at *9.

Plaintiff cites several cases in which courts have held subcontract language generally referencing a prime contract to refer only to specifications and other technical requirements. In McKinney Drilling Co. v. Collins Co., 517 F. Supp. 320 (N.D. Ala. 1981), a subcontractor prevailed in a breach of contract claim against a general contractor when the latter attempted to assert that provisions of the general contract trumped specific contradictory provisions written into a subcontract. The court found that

> references to the general contract and the plans and specifications in the manner done in the subcontract involved in this case only incorporate the provisions thereof which relate to the character and manner of work to be performed. Such references do not incorporate administrative provisions or pay provisions of the general contract or the plans and specifications.

Id. at 328. However, that only applied to such references "in the manner done ... in this case." McKinney Drilling actually turned largely on the legal doctrines stating that (a) when specific provisions contradict general provisions within the same agreement, the specific provisions prevail, and (b) written clauses prevail over printed clauses, since it is presumed that written provisions received stricter attention from the parties. See id. at 324 (collecting authorities). There were three separate components to the agreement at issue in McKinney Drilling: a general contract, a form subcontract, and a typewritten proposal created by the subcontractor specifically for the project that ultimately wound up in litigation, which the court effectively held stood in reverse priority order. The court found that all of those documents were integrated into the complete agreement between the parties. The typewritten proposal, being the most specific and customized component of that agreement, trumped the other parts when they came into conflict. The McKinney Drilling court relied on language from the Fifth Circuit case of Perry v. United States, 146 F.2d 398 (5th Cir. 1945), holding that

> while a reference in a subcontract to the provisions, plans and specifications of a general contract imports them into the subcontract *where not inconsistent with its terms*, it is quite well settled that such a reference is not effective beyond this, and that if the subcontract contains words of definite limitation, they will be given effect and the reference limited accordingly.

Id. at 400 (emphasis added). McKinney Drilling is therefore unavailing as authority in favor of Plaintiff's nonincorporation argument because the proposal in McKinney Drilling did contain "words of definite limitation"–provisions that contradicted the general contract–whereas no such limiting language is present here.

In Optical Cable Corp. v. Mass. Elec. Constr. Co., 21 F. Supp. 871 (W.D. Va. 1998), another case upon which Plaintiff's nonincorporation argument relies, the court denied the defendant's motion for a change of venue under 28 U.S.C. § 1404(a). The purchase order (the subcontract) in that case referenced only "contract documents," and the court in that case held that a genuine issue of material fact remained regarding whether the parties understood "contract documents" to include the general contract. By contrast, the Hydro-Quebec tender documents were expressly integrated into the parties' agreement in this case by the terms of the Purchase Orders, and a copy of those documents, although admittedly voluminous, was included on CD-ROM in the initial RFP that Litostroj sent to Ideal after Hydro Quebec awarded the former the general contract for the CA and RDC projects. In addition, only ambiguity with respect to the facts defeated judgment as a matter of law on the motion to transfer in Optical Cable; the court did not find that the venue provision was not integrated–only that it might not have been integrated, because neither side had proven what was meant by "contract documents." The Hydro Quebec tender documents in the instant case, by contrast, were identified by name.

John W. Johnson, Inc. v. Basic Constr. Co., 429 F.2d 764 (D.C. Cir. 1970), also cited by Plaintiff, is also distinguishable from the facts at bar. In Johnson, the court held that a disputes clause governing disputes between an owner and a general contractor was not incorporated into a subcontract between the general contractor and a subcontractor. However, by the prime contract's own terms, the prime contract in that case was incorporated into the agreement between the general contractor and subcontractor only "insofar as such terms and provisions are applicable to the work to be performed by such subcontractors."

Id. at 773. Again, no such limiting language appears in the Hydro Quebec tender documents, or in the Purchase Orders. The absence of such terms implies that no such limitation was intended.

U.S. Steel Corp. v. Turner Constr. Co., 560 F. Supp. 871 (S.D.N.Y. 1983) does offer support for Plaintiff's position. In that case, notwithstanding the fact that the general contract contained a forum selection clause, and the subcontract provided that the subcontractor "agree[d] to be bound ... by each and all of the terms and provisions of the General Contract and the other Contract Documents," id. at 873, the subcontractor was only bound by the terms of the prime contract only with respect to those provisions related to the scope, quality, chracter, and manner of the work to be performed. Id. at 873-74. Under New York law, applicable in that case, "[p]rime contract provisions unrelated to the work of the subcontractor, such as a 'dispute' clause governing the resolution of monetary claims between the project owner and general contractor, are not incorporated by reference into a subcontract." Id. at 374 (collecting authorities). Even in this case, however, the specter of limiting language remains: the forum selection clause in the general contract was contained in an article entitled "Monetary Claims and Demands Upon IBM [the owner]," id. at 872, which would strongly suggest that it was meant to be cabined to disputes involving the owner, and could conceivably be read to render the clause irrelevant in any dispute between prime contractor and subcontractor even if incorporated. In addition to the language in the prime contract, the subcontract also limited the incorporation of the general contract as "[w]ith respect to the Work to be performed and furnished by the Subcontractor hereunder." Id. at 873.

### B. Enforceability

The leading Supreme Court case with respect to forum selection clauses is M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972). Bremen was an admiralty case involving a German petitioner and an American respondent which had signed a towage contract containing a forum selection clause agreeing to litigate disputes in London. The Court held that "the forum clause should control absent a strong showing that it should be set aside." Id. at 15. The burden is upon the challenger to "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id.. While Bremen was an admiralty case involving international parties and performance on international waters, and noted a history of American courts resisting forum selection clauses, Bremen has been widely cited and channeled in upholding forum selection clauses even in contexts substantially more domestic in character. The Sixth Circuit recently held, in a case involving two American companies vying over whether to litigate in Ohio or Pennsylvania, that "[a] forum selection clause in an agreement in connection with an arm's length commercial transaction between two business entities is valid and enforceable." Preferred Capital, Inc. v. Assocs. in Urology, 453 F.3d 718, 721 (6th Cir. 2006); see also Kennecorp Mortgage Brokers, Inc. v. Counter Club Convalescent Hospital, Inc., 610 N.E.2d 987, 988 (Ohio 1993). In determining the validity of a forum selection clause, courts in this circuit consider the following factors: (1) the commercial nature of the contract; (2) the absence of fraud or overreaching; and (3) whether enforcement of the forum selection clause would otherwise be unreasonable or unjust. Id.

All three Preferred Capital factors weigh in favor of the validity of the forum selection clause. Ideal was, and Hydro Quebec and Litostroj are, sophisticated commercial

parties. The general contract between Hydro Quebec and Litostroj and the contract between Ideal and Litostroj were both negotiated at arm's length. While <u>Preferred Capital</u> strongly suggests that the international character of litigation need no longer be as primary consideration as it was in <u>Bremen</u>, this litigation is nevertheless international in character, involving one American and one Canadian company. No allegations of fraud or overreaching have been raised.

Plaintiff does raise objections as to the reasonableness and justice of enforcing the forum selection clause; the Court finds these objections unavailing as well. Plaintiff contends that

> the forum selection clause should not be enforced with respect to the adversary proceeding because (a) it contravenes the strong public policy of centralizing core bankruptcy proceedings with the Bankruptcy Court; (b) Ideal was not a party to the contract containing the forum selection clause, and the forum selection clause is not a vital part of the Purchase Orders; (c) if the adversary proceeding is transferred, this Court nevertheless would have to determine the validity of Litostroj's proof of claim, which is inextricably linked to Ideal's Complaint; and (d) enforcing the forum selection clause would be unfair to Ideal, and cause it substantial prejudice.

Plaintiff first objects that enforcing the forum selection clause would be unreasonable or unjust because it contravenes the strong public policy of centralizing core bankruptcy proceedings in bankruptcy court. Plaintiff overstates the core nature of this adversary proceeding, however. It is true that Plaintiff has integrated its objection to Litostroj's proof of claim into the adversary proceeding, and objections to claims are core bankruptcy proceedings under 28 U.S.C. § 157(b)(2)(B), as are counterclaims by the estate against persons filing claims against the estate under 28 U.S.C. § 157(b)(2)(C). However, the essence of this controversy is a breach of contract dispute, as well as one for unjust enrichment, not one arising under the Bankruptcy Code. Claims for breach of contract and unjust enrichment are not core proceedings. <u>Access Care, Inc. v. Sten-Barr Network Solutions, Inc.</u>, 333 B.R. 706, 711 & 713 (Bankr. E.D. Pa. 2005). This Court will not be requiring a remote, unspecialized foreign venue to interpret or apply American bankruptcy law, which would be a powerful factor weighing in favor of retaining venue here. As far as the Montreal court will be concerned, the matters before it will be a claim and counterclaim for breach of contract.

The same logic weighs against retaining venue here because of the need to determine the validity of Litostroj's proof of claim. The validity of Litostroj's proof of claim will almost certainly turn entirely on the facts that will be litigated in the claims and counterclaims for breach of contract that Plaintiff and Litostroj will bring against one another in Montreal. Few legal issues and even fewer factual issues appear likely to stand between the resolution of that non-core proceeding and the matter of allowing or disallowing Litostroj's claim against the estate. If Defendant is found to have breached the contract, it would have to devise a clever argument for somehow allowing its claim nevertheless; if Plaintiff is found to have breached the contract, the situation will be reversed. Once judgment is rendered in Montreal, the claim in this Court will no longer be contingent and unliquidated and will likely not be long, if at all, disputed. Allowing or disallowing it at that stage will likely not be a particularly complex exercise.

The argument that enforcement of the forum selection clause would be unreasonable or unjust because Ideal was not a party to the original contract between Hydro Quebec and Litostroj, and that it is not a vital part of the Purchase Orders, is more accurately against the clause's applicability–i.e., part of Plaintiff's argument against incorporation of the clause, not against the reasonableness or justice of enforcing that clause if in fact it is incorporated.

The argument that enforcing the forum selection clause would be unfair and prejudicial to Plaintiff is similarly acarpous. Plaintiff argues that it would be inefficient to litigate the breach of contract claim in Quebec while litigating the objection to the proof of claim in Ohio; that it would be inefficient to litigate the CA and RDC transaction in Quebec while litigating the Besy transaction here; and that many of Plaintiff's witnesses would be subject to compulsory process in Ohio, would not be subject to compulsory process in Quebec, and no longer work for Plaintiff, which has ceased operations, and therefore could not be compelled to testify for Plaintiff in Quebec the way they could be here. Of these grounds, the first two are legally fruitless even if factually correct; "mere inconvenience or additional expense is not the test of unreasonableness." Access Care, 333 B.R. at 714, quoting Diaz Contracting, Inc. v. Nanco Contracting Corp. (In re Diaz Contracting, Inc.), 817 F.2d 1047, 1053 (3d Cir. 1987). The burden the challenger of a forum selection clause bears is heavier than that. In Bremen, the Supreme Court held that

> [w]hatever 'inconvenience' [the challenger] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting. In such circumstances it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.

Bremen, 407 U.S. at 17-18. Plaintiff will not be deprived of his day in court in this circumstance. Defendant has admitted via its own pleadings that it is amenable to process in Quebec. In addition, since the Court likewise dismisses the adversary pertaining to the Besy transaction on *forum non conveniens* grounds as discussed infra, there would be no split fora for litigating the claims between these two parties even if the inconvenience of such a split were legally sufficient grounds for holding enforcement of a forum selection clause unreasonable. The argument that Plaintiff's witnesses can be compelled to testify in Ohio but not in Quebec is stronger, but not strong enough. Many of Plaintiff's witnesses come from Ohio, but many also reside elsewhere in the United States, especially in Minnesota, where Electric Machinery Company, an enterprise related to Ideal, is headquartered. While litigating in Quebec will make attendance by Ohio witnesses noncompulsory, it will also bring other witnesses–most significantly, those of Hydro Quebec, a Canadian corporation also domiciled in Quebec–*within* the reach of compulsory process. Litigating in Quebec's courts will likely be somewhat more difficult and expensive for Plaintiff than would litigating in Ohio, but not nearly so much that it can be characterized as "so gravely difficult and inconvenient" that it will for all practical purposes deprive Plaintiff of its day in court.

In addition, Ideal was well aware that it was incorporating a voluminous amount of French documents, and giving them high priority within the hierarchy of documents governing the parties' agreements, when it executed the Purchase Orders. Ideal was a

sophisticated commercial party, described by Plaintiff itself as a "market leader" in generator manufacturing (Compl. in 08-6077 ¶ 4), and had been in business for more than a century. Ideal was soliciting a substantial amount of business from a Francophone prime contractor under contract from a Francophone owner; as Plaintiff itself notes, the amount of money involved was such that Litostroj's nonpayment on the CA & RDC contract was a major factor contributing to Ideal's insolvency. The potential payoff may have convinced Ideal to sign a contract that incorporated many terms which it did not correctly value; however, it was aware at the time that it was doing so, and still assented to the integration of the prime contract without limiting language, despite the opportunity to bargain for such limiting language.

### III. *Forum Non Conveniens*

The doctrine of *forum non conveniens* applies in the bankruptcy context. See Baumgart v. Fairchild Aircraft Corp., 981 F.2d 824, 833 (5th Cir. 1993), cert. denied, 508 U.S. 973 (1993). A *forum non conveniens* designation is consigned to the sound discretion of the trial court. Kamel v. Hill-Rom Co., 108 F.3d 799, 802 (7th Cir. 1997). The defendant bears the burden of proof on all elements of a motion to dismiss on the basis of *forum non conveniens*. Levey v. Hamilton (In re Teknek, LLC), 354 B.R 181, 206 (Bankr. N.D. Ill. 2006). There is a presumption in favor of the plaintiff's choice of forum. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981). In order to prevail on such a motion, a defendant must first establish that there is an available and adequate alternative forum where the claim can be heard. Id. An alternative forum is available if the defendant is amenable to service of process in the alternative forum. Piper Aircraft at 255 n.22 (1981). The alternative forum is adequate if the remedy offered by the other forum is not clearly unsatisfactory or is nonexistent. Id.; see also Kamel at 803 ("An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly."). Once a showing of an available and adequate alternate forum is made, the defendant must then show that the balance of private and public interest factors favor litigation in the alternate forum. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). Private interest factors relate to the convenience of the litigants; they include the relative ease of access to sources of proof, the availability of compulsory process for obtaining the attendance of unwilling witnesses, the cost of obtaining attendance of willing witnesses, the possibility of viewing the premises (if appropriate to the action), and all other practical problems that make trial of a case easy, expeditious, and inexpensive. Id. Public interest factors include the administrative burden of piling up litigation in congested courts, the burden of imposing jury duty on members of a community with little relation to the litigation, the interest of a community in having localized controversies litigated locally, and the appropriateness of trying diversity cases in a forum most at home with the governing law. Id. at 508-09.

The trial courts of Quebec are both available and adequate. Quebec courts recognize a claim for breach of contract, and the statute of limitations in Quebec for such actions is three years. It also appears that the Civil Code of Quebec recognize an action for unjust enrichment. Civil Code of Quebec, S.Q. 1991, c. 64, s. 1493-6; ; see also Lionel Smith, Property, Subsidiarity and Unjust Enrichment, in UNJUSTIFIED ENRICHMENT: KEY ISSUES IN COMPARATIVE PERSPECTIVE 588, 595 (David Johnston & Reinhard Zimmermann eds., 2002). Plaintiff's complaint with respect to the CA and RDC project contends that

Defendant breached the contract in October 2006.[4] (Compl. in 08-6077 at ¶ 38.) Defendant stipulated in its reply that it would accept service in Quebec. (Reply in 08-6077, 20.) Plaintiff's complaint with respect to the Besy project is less specific regarding when it alleges the breach of contract occurred. Defendant's proof of claim with respect to the Besy project includes a notice of default that Litostroj send to Ideal on October 18, 2006. (Def.'s Proof of Claim #132-1 Ex. A.) Defendant stipulated that it would accept service in Quebec in that matter as well. (Reply in 08-6078, 6.)

The Court therefore proceeds to analyze whether the Gilbert factors favor litigation here or in Quebec. A plaintiff

> should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.

Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947); see also Duha v. Agrium, Inc., 448 F.3d 867, 874 (6th Cir. 2006) (dismissal in Michigan to compel litigation in Argentina held inappropriate when U.S. citizen sued U.S. defendant in a U.S. court after being terminated in Argentina and moving back to the U.S.). Oppressiveness and vexation, however, are not absolute prerequisites for dismissal on the ground of *forum non conveniens*. Barak at 911; see also Stewart v. Dow Chem. Co., 865 F.2d 103 (6th Cir. 1989) (an interpretation that the burden on the defendant must be "oppressive" to warrant dismissal "would constitute a misreading of Piper and its progeny"). The Court notes, however, that the requirement of oppressiveness and vexation applies only "to a defendant," not the court, and the elements of the Koster test are disjunctive. The Court reconciles the cases thus: The principle under Piper, that "the central focus of the *forum non conveniens* inquiry is convenience," Piper at 249, is generally applicable to all factors of the analysis; the requirement that the defendant show that litigating in the plaintiff's chosen forum would be oppressive and vexatious, by contrast, is applicable only to the defendant's own difficulties. Therefore, while no single factor or circumstance is dispositive in the *forum non conveniens* analysis, as it is specifically designed to be flexible enough to allow consideration of a broad spectrum of facts related to pending litigation, see Piper at 249-50, facts showing the particular inconvenience of the defendant must be many and strong to outweigh a plaintiff's choice of a forum otherwise appropriate for the litigation.

---

[4] In addition, courts in dismissing cases for improper venue under *forum non conveniens* have, when appropriate, conditioned such dismissal on the waiver of certain defenses and acceptance of certain other stipulations by the prevailing defendant. This includes one of the primary cases relied upon by Defendant in arguing for the availability and adequacy of the Montreal forum. See Barak v. Zeff, 289 Fed. Appx. 907, 910 (6th Cir. 2008) (appellate court noted without disapproval that the district court dismissed the suit at the trial level on the condition that the defendant submit to the jurisdiction of the Spanish courts, waive any statute of limitations defense, and stipulate that United States courts may enforce any final judgment rendered in the alternative forum); see also Piper Aircraft at 242 (defendants agreed to submit to jurisdiction in Scottish courts and waive statute of limitations defenses). As a precaution, this Court intends to impose similar conditions, as it is well aware that, while the termination may have formally occurred in October 2006, many of the allegations in both complaints relate to conduct that occurred in 2005.

## A. Vis-a-vis the Chute Allard and Rapides des Coeurs Projects

With respect to ease of access to sources of proof, the single largest bloc of nonparty witnesses will likely be a number of employees from Hydro Quebec, who will be within the reach of compulsory process in Quebec and not in Ohio. The same considerations affect the ease of procuring documentary evidence from Hydro Quebec, the most significant source of nonparty documents. Plaintiff counters that all of its documents are located in Ohio, but it is presumed that it will produce its own documents to pursue its claim. However, a number of Plaintiff's witnesses do live in Ohio, and as Ideal's assets have already been sold–Plaintiff is only ideal's successor and is not an operational company, so its employees have moved on to other jobs. Plaintiff also has witnesses in Minnesota, but these are essentially a wash in the analysis. Plaintiff notes that the parties have agreed to exchange documents electronically, which minimizes the importance of where the originals are located; this is an appropriate argument with respect to party documents, but does nothing about the lack, in Ohio, of compulsory access to Hydro Quebec's documents. With respect to the costs of attendance of willing witnesses, Litostroj would face some costs bringing its witnesses to Ohio, but not appreciably, if at all, more than Plaintiff will face bringing its witnesses to Canada. Defendant's costs to bring those witnesses to Ohio would not rise to the level of oppression or vexation.

The possibility of viewing the premises is a minor concern and is probably inappropriate to this action. The generators that are in place in the actual, completed projects are the ones manufactured by Litostroj's preferred supplier after the contract was terminated. That said, Plaintiff has not identified any immobile evidence in Ohio that would make the court weigh this factor in its favor, either, so this is likewise a wash.

However, there is one additional, and painfully obvious, factor that is not internal to Defendant, despite the fact that it falls within the sphere of private factors because it relates to "other practical problems that make trial of a case easy, expeditious, and inexpensive." Gilbert at 508. This Court is monolingual. The courts of Quebec, by contrast, are bilingual in French and English. Judges and court officers speak both languages, and witnesses may testify in either French or English without a translator. A substantial portion of the prodigious number of documents in this litigation are in French, including the Tender Documents that contain the specifications for the generators that Defendant, as part of its claim, alleges that Ideal failed to meet. French is also the primary language of many of the witnesses, including many of the nonparty witnesses. The administrative burden on this Court of managing a bilingual trial would be substantial.[5] Quebec provides a uniquely appropriate forum for litigation of this nature.

The public interest factors inherent in this litigation are minimal. This Court's docket

---

[5] The burden on the parties would be far from inconsequential as well: Counsel for Litostroj avers that he obtained an estimate for the translation of the Tender Documents at $58.00-$66.00 *per page*. Plaintiff itself notes in its complaint that even the single Tender Document containing the forum selection clause itself "is 94 pages long, in French, and contains numerous provisions relating to the contract between Hydro Quebec and Litostroj." (Pl's Mem. in Opp. in 08-6077, 4.) Janez Dornik submitted a declaration stating that the total volume of documents located in Canada related to this litigation could reach 7,700 pages, though not all of those would be in French. (Dornik Decl. ¶ 6.) In addition, many of the communications relevant to this litigation were between Litostroj and Hydro Quebec and were in French. Id. ¶ 7.

is not particularly congested, and no request for a jury trial has yet been made. Were such a demand made, this jurisdiction has sufficient contacts with the litigation, as the manufacturer was located here, that the Supreme Court's concern with imposing such duty on members of a community with little relation to a lawsuit would not be particularly salient. That said, given the international nature of this transaction, it can also not be said that this is a "localized controversy" that would give rise to a particular public interest in being tried in Ohio. With respect to the governing law, this Court has not undertaken an analysis of, nor called for briefing upon, the issue of which jurisdiction's substantive law governs this transaction. The forum selection clause strongly suggests that the law of Quebec will control, though this Court refrains from making a particular conclusion of law on that point. Even if it is ultimately decided that the law of Ohio controls, however, this Court finds that the concerns expressed by the Supreme Court regarding making foreign jurisdictions unravel problems of American law, see Gilbert at 509, are near their nadir in circumstances such as this. "The Canadian system is similar in many respects to the legal system in the United States." Ensign-Bickford Co. v. ICI Explosives USA, Inc., 817 F. Supp. 1018, 1031 (D. Conn. 1993). In addition, this is an ordinary breach of contract claim; it does not implicate complicated statutory schemes of the U.S. or the state of Ohio. There may be subtle variations between Quebec's law and Ohio's with respect to the elements of a breach of contract claim, but this is not a cause of action that will be unusual to any Canadian court. The Canadian court will not need to become familiar with American bankruptcy law, as the transactions between the parties transpired before the company filed for bankruptcy, and the Canadian court will not need to adjudicate the allowance or disallowance of Litostroj's claim in this case; that objection can (and will) be stayed until the resolution of the underlying claims from which both the claim and the objection thereto flow.

### B. Vis-a-vis the Besy Project

The two primary criteria influencing the Court's holding with respect to the CA & RDC projects–the availability of compulsory process for nonparty evidence (including likely unwilling witnesses), and the bilingual nature of this litigation–also apply with respect to the Besy project. The identity of the relevant nonparties is different, but at least one major nonparty, AbitibiBowater, and very likely the other, Cegerco, are beyond the reach of Ohio's compulsory process and within the reach of Quebec's. In addition, as with the CA & RDC projects, the administrative burden of managing a bilingual trial would be substantial, and the burden of translating the documents involved with respect to the generator's manufacture would be similarly severe, regardless of upon whom they fell.

In addition, the possibility of viewing the premises is not an irrelevant consideration with respect to the Besy project, as that generator was in fact manufactured by Ideal, and currently sits in Quebec. It may be unnecessary to view the generator itself to resolve the controversy–it is too early in this litigation to tell–but should the need to do so arise, it would be easier to do so in Quebec than in Ohio.

Most of the relevant public interest factors are equally applicable to both adversaries. The exception is with respect to the choice of law analysis: no forum selection clause enters this analysis in the Besy controversy. However, as noted supra, it is still an open question whether Ohio law will govern the underlying dispute at all, and even if it does, an ordinary breach of contract action will not require the Quebec court to apply law completely different from that with which it routinely deals.

## IV. Conclusion

### A. Grounds for Dismissal for Improper Venue

With respect to the forum selection clause in the Hydro Quebec tender documents, the Court finds no reason to hold that the parties' unqualified incorporation of the tender documents into their own agreement somehow implicitly excluded those provisions related to dispute resolution. While there are numerous cases holding that subcontracts incorporating prime contracts do so only to the extent of the nature and details of the work to be performed, the contracts in such cases have, as a general rule, expressly cabined the applicability of the associated prime contract to the work to be performed. No such qualifying language exists in the instant transaction. The forum selection clause is also enforceable, as the burden is upon the party trying to escape enforcement of such a clause and is heavy, and Plaintiff has failed to carry that burden.

In addition, with respect to both the CA & RDC projects and the Besy project, the doctrine of *forum non conveniens* favors litigation in the bilingual courts of Quebec. A bevy of factors, public and private, control dismissals under *forum non conveniens*. However, while there are several factors favoring dismissal under that doctrine in the instant case, all others pale next to the most salient one: the courts of Quebec are bilingual in French and English. This Court is not. A large portion of the documents relevant to both of these litigations are in French, and French is the native language of a number of the most likely witnesses. This includes documents and witnesses from Hydro Quebec, which would not only be difficult and costly to translate but would be difficult to obtain in the first place in this forum, because that company and its employees are beyond the reach of this forum's power to compel attendance.

### B. Conditional Dismissal

The parties did not raise the issue of conditional dismissal, but it has been the practice of courts granting dismissals on the ground of *forum non conveniens* to impose conditions to protect the interests of the plaintiff, which generally include, but are not limited to, waiver of service, jurisdictional, and statute of limitations defenses; consent to enforceability of any judgment from the new forum in the prior one; and acceptance of reinstitution of the proceeding in the prior forum if litigation does not proceed in the new forum. See Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974 (2d Cir. 1993) (imposing conditions related to appointment of successor trustee and pursuit of plaintiff's claims against defendant in Venezuelan courts within a reasonable time); Borden, Inc. v. Meiji Milk Products Co., 919 F.2d 822 (2d Cir. 1990) (dismissal conditioned on Japanese forum ruling on motion for injunction within 60 days of submission); Great Northern Ins. Co. v. Constab Polymer-Chemie GmbH & Co., 2007 WL 2891981 (N.D.N.Y. 2007) (not reported) (imposing conditions of consent to jurisdiction, waiver of statute of limitations, and consent to reinstitution in the event the courts of Germany did not exercise jurisdiction over the action); Baumgart v. Fairchild Aircraft Corp., 1991 WL 487242 (W.D. Tex. 1991) (seven conditions imposed along with dismissal of case).

The Court is also mindful of the particular responsibility of bankruptcy courts to take into account not only the interests of the plaintiff and defendant, but also those of the estate and its creditors. See Fidelity Bank, N.A. v. M. M. Group, Inc., 77 F.3d 880, 882 (6th Cir.

1996) ("... a primary purpose of both receivership and bankruptcy proceedings is to promote the efficient and orderly administration of estates for the benefit of creditors ..."); Delphi Automotive Systems, LLC v. Segway, Inc., 519 F. Supp.2d 662, 670 (E.D. Mich. 2007) (when analyzing whether to exercise permissive abstention power under 28 U.S.C. § 1334(c)(1), bankruptcy courts consider effect that not hearing the case would have on the efficient administration of the estate). The litigants in this proceeding are not the only parties in interest. The underlying bankruptcy case has been pending since October of 2006. The bulk of the estate's assets sit in a liquidating trust awaiting distribution to multitudinous other creditors. It is in the best interests of the estate that this litigation be concluded within a reasonable time. The Court assumes that litigation in Quebec will not prove significantly more time-consuming than a bilingual trial would here; however, the Court is open to revisiting that assessment, and with it, revisiting the determination of whether the balance of public and private interest factors favors litigation in Quebec, should events prove that assumption unwarranted.

The Court will enter a separate order in each adversary dismissing the instant adversaries, save for the objections to proofs of claim contained therein, which will be stayed pending resolution of this matter in Montreal. As the objections to the proofs of claim will remain unresolved, neither of these adversary proceedings will be administratively closed, and the court will not divest itself of jurisdiction over these proceedings. The orders will be subject to the following conditions:

(1) Defendant will submit to the service of process and waive any jurisdictional defenses in the appropriate Montreal forum;

(2) In the Montreal proceedings, Defendant will waive any statute of limitations defense or similar defense whether arising under the laws of Ohio, Quebec, or another source;

(3) Defendant agrees to allow this Court to resume adjudication of this matter if any judgments obtained against it by Plaintiff is not properly satisfied, or if the courts of Quebec for any reason find they lack jurisdiction over this matter;

(4) Defendant agrees to allow this Court to resume adjudication of this matter and permit Plaintiff to amend its complaint here to reinstate those counts dismissed by these orders if at any point it appears that a final order cannot or will not be rendered in the courts of Quebec within four years from the date of the order to be entered contemporaneously herewith.

/s/ Russ Kendig
RUSS KENDIG
U.S. BANKRUPTCY JUDGE

**Service List:**

Dov Frankel
Harry Greenfield
Jeffrey C. Toole
Buckley King, LPA
600 Superior Ave E
Suite 1400
Cleveland, OH 44114

Jeffrey T. Golenbock
Golenbock, Eiseman, Assor, Bell & Peskoe
437 Madison Ave
New York, NY 10022

I.E. Liquidation, Inc.
300 E First Street
Mansfield, OH 44902

Rocco I. Debitetto
c/o Hahn Loeser + Parks LLP
200 Public Square
Suite 2800
Cleveland, OH 44114-2301

Derrick Rippy
Office of the US Trustee
H. M. Metzenbaum U.S. Courthouse
201 Superior Avenue
Suite 441
Cleveland, OH 44114

Elizabeth Wambsgans
Jean Robertson
Scott N. Opincar
Sean D. Malloy
McDonald Hopkins LLC
600 Superior Ave., East
Suite 2100
Cleveland, OH 44114