**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 10:19 AM April 1, 2015**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| I.E. LIQUIDATION, INC., ) | CASE NO. 06-62179 |
| ) | |
| Debtor. ) | ADV. NO. 08-6077 |
| _____ ) | |
| ) | JUDGE RUSS KENDIG |
| I.E. LIQUIDATION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM OF OPINION (NOT** |
| ) | **INTENDED FOR PUBLICATION)** |
| LITOSTROJ HYDRO, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

    Before the court is I.E. Liquidation, Inc.'s ("Debtor") motion to reinstate various counts against Litostroj Hydro, Inc. ("Litostroj") which were previously dismissed by this court in an opinion dated March 18, 2009 ("2009 Opinion") based on a forum selection clause and the legal doctrine of *forum non conveniens*, allowing the claims to instead be litigated in Canada. This court placed a condition on the dismissal of Debtor's claims, reserving the right to resume adjudication if "at any point it appears that a final order cannot or will not be rendered in the courts of Quebec within four years from the date of [the 2009 Opinion]." As of the issuance of this opinion, over four years have passed and it appears likely that a final resolution in Canada remains years away. Therefore, Debtor moves this court to reclaim jurisdiction and hold a trial as

soon as possible. Litostroj disagrees, raising a number of arguments as to why litigation in Quebec is both prudent and required by law.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## Factual and Procedural Background

Ideal Electric Company ("Ideal"), was a business headquartered in Mansfield, Ohio primarily involved in the manufacturer of medium power generators for gas, steam, and hydroelectric turbines. Ideal was a successful company for over one hundred years, but various economic forces pushed the company into bankruptcy in 2006. I.E. Liquidation, Inc. is the remaining entity that holds Ideal's litigation rights. Litostroj is a Canadian company involved in the design and implementation of hydroelectric power solutions.

In early 2005, Hydro Quebec, a Canadian utility company, solicited bids to build and equip two hydro-electric energy facilities. Hydro Canada selected Litostroj's bid, but required the generators in the new facilities to be provided by Ideal. At this point, Litostroj and Ideal entered into a set of contracts with Ideal providing twelve generators in exchange for payments of approximately $17,000,000.00. The payments were to be made in various phases, with $1.6 million for the initial technical drawings, $13.9 million for the construction and testing of the generators, and $1.8 million for installation and other various expenses. According to Debtor, Litostroj's payments were often delayed or never made, placing Ideal under significant financial strain. Debtor argues that the costs associated with the construction of the generators, combined with Litostroj's failure to make contract payments, were a major factor in Ideal's bankruptcy.

On June 20, 2008, Debtor filed an adversary proceeding against Litostroj in the United States Bankruptcy Court for the Northern District of Ohio, alleging breach of contract claims seeking damages in excess of $11,000,000.00. Debtor also alleges Litostroj violated the implied covenant of good faith and fair dealing, stating that Litostroj intentionally sabotaged Ideal so a Litostroj-owned company would be awarded the generator construction contracts and be able to keep the associated profits. Therefore, Debtor believes any profits Litostroj produces from the generator construction originally entrusted to Ideal are a form of unjust enrichment. Collectively, the court will refer to these claims as the "Hydro Case." Debtor also filed the "Besy Case" against Litostroj, alleging claims similar to the Hydro Case, but associated with the construction and delivery of a $1,200,000.00 generator on an unrelated project. While the Besy Case was discussed within the 2009 Opinion, Debtor and Litostroj have since agreed to a settlement.

Shortly after Debtor initiated the Hydro Case in the United States, Litostroj filed a motion seeking to change the litigation forum to Canada. Litostroj based its motion on a forum selection clause and the legal doctrine of *forum non conveniens*. The 2009 Opinion determined that a valid forum selection clause existed between Litostroj and Debtor, and therefore adjudication in

Quebec was appropriate. The court also relied on *forum non conveniens*, a legal doctrine that balances the public and private interests furthered or harmed by litigation in one forum over another. While the court found some factors weighing in favor of litigation in Ohio, and others favoring Quebec, the court's main focus was on the multilingual nature of the litigation. Residents and businesses in Quebec often communicate and conduct business in French and English. Consequently, significant portions of the documentary evidence necessary for a trial is written in French, and many witnesses would testify in French. The courts of Quebec are multilingual, allowing documentation and testimony to be introduced in either language. While certain aspects of a trial may be easier in the United States, the inconvenience and expenses associated with a bilingual trial is greatly reduced in Canada. After evaluating all of the factors, the 2009 Opinion determined that litigation in Canada was appropriate.

The court dismissed Debtor's case to effectuate the transfer between Ohio and Quebec. However, to protect Debtor and Debtor's creditors, the 2009 Opinion placed the following conditions on the court's dismissal:

> (1) [Litostroj] will submit to the service of process and waive any jurisdictional defenses in the appropriate Montreal forum;
> (2) In the Montreal proceeding, [Litostroj] will waive any statute of limitations defense or similar defense whether arising under the laws of Ohio, Quebec, or another source;
> (3) [Litostroj] agrees to allow this Court to resume adjudication of this matter if any judgments obtained against it by [Debtor] is not properly satisfied, or if the courts of Quebec for any reason find they lack jurisdiction over this matter;
> (4) [Litostroj] agrees to allow this Court to resume adjudication of this matter and permit [Debtor] to amend its complaint here to reinstate those counts dismissed by these orders if at any point it appears that a final order cannot or will not be rendered in the courts of Quebec within four years from the date of the order to be entered contemporaneously herewith

I.E. Liquidation v. Litostroj Hydro, Inc. (In re I.E. Liquidation), 2009 WL 1586706, at *15 (Bankr. N.D. Ohio 2009). The court entered an associated order reiterating the above conditions. The 2009 Opinion also noted that condition (4) was not automatic, but that the court would revisit the "balance of public and private interest factors" if the court's assumption that litigation in Canada would not be significantly slower than litigation in the United States proved untrue. Id. This opinion will refer to condition (4) as the "Timing Condition."

After the 2009 Opinion, Debtor filed the same claims in the courts of Quebec, Canada on July 28, 2010. Canadian trial practice is substantially different than the United States, often moving at a slower pace. For example, before obtaining a trial date, all parties must assert that they are ready for trial. After making this determination, a Canadian judge is assigned to the case, a pretrial hearing is held, and a trial date is set. Debtor and Litostroj each filed notice that they were ready for trial on February 19, 2014, but a pretrial hearing was not held until October 7, 2014, over seven months later. At the pretrial hearing, a trial date was set for late 2018. Further delaying final resolution, any determination by a Canadian trial court is subject to appeal.

3

In summary, as of the issuance of this opinion, approximately five years have passed since the 2009 Opinion, but a final judgment in Canada remains at least an additional five years away.

## Legal Arguments

The court held a hearing in this case on January 6, 2015, where Debtor and Litostroj presented their arguments pertaining to the proper litigation forum. The parties raised two threshold issues, either of which would alleviate the need for the court to weigh the various factors favoring litigation in either the United States or Canada. In an agreed scheduling order, the court outlined the two threshold issues as follows:

> A. Whether the [Timing Condition] . . . was limited solely to counts dismissed under the *forum non conveniens* doctrine and the case must remain in Quebec for adjudication because the counts were also dismissed pursuant to a forum selection clause;
>
> B. Whether, because the [2009 Opinion] stated that Litostroj agreed to the [Timing Condition] and Litostroj did not appeal the [2009 Opinion], Litostroj is prohibited or barred in whole or in part from contesting reinstatement of the dismissed counts and resumption of adjudication of those counts in this Court by the doctrine or res judicata.

Regarding the first issue, Litostroj argues that based on the text of the 2009 Opinion the Timing Condition only applies to claims dismissed under *forum non conveniens*. Therefore, because the 2009 Opinion dismissed Debtor's claims based on a valid forum selection clause <u>and</u> *forum non conveniens*, the court has already conclusively determined that the forum selection clause requires litigation in Canada. Debtor disputes Litostroj's reading of the 2009 Opinion, instead arguing that the Timing Condition is applicable to each claim dismissed by the 2009 Opinion, no matter the underlying reasoning.

Second, Debtor argues that the 2009 Opinion calls for the reinstatement of Debtor's claims in the United States if the Canadian litigation does not move with sufficient speed, and as the Timing Condition's four year timeframe has passed, Litostroj is barred by res judicata from attempting to relitigate the proper forum. Any argument against the validity of the Timing Condition, according to Debtor, should have been raised in the appeal of the 2009 Opinion. While the 2009 Opinion was appealed, Litostroj did not contest the validity of the Timing Condition. In response, Litostroj notes that arguments pertaining to the reinstatement of the Debtor's claims could not have been raised in the 2009 Opinion, as the opinion only discussed the initial dismissal of Debtor's claims. Therefore, because the issues presently before the court and the issues from the 2009 Opinion are materially different, res judicata is inapplicable.

The court will address each issue in turn.

## I. The Timing Condition Applies To All Counts Dismissed by the 2009 Opinion

The court will first address the scope of the Timing Condition, which allows Debtor to reinstate previously dismissed counts against Litostroj in the United States "if at any point it appears that a final order cannot or will not be rendered in the courts of Quebec within four years from the date of the [2009 Opinion]." As briefly noted above, Litostroj believes, based on the specific wording of 2009 Opinion, that the Timing Condition only applies to counts dismissed under *forum non conveniens*. Therefore, because the Hydro Case was dismissed based on *forum non conveniens* and a forum selection clause, the Timing Condition cannot be used to reevaluate the applicability of the forum selection clause. Debtor disagrees, arguing that the text of the Timing Condition makes no distinction based on the legal theory dismissing a claim.

In support of its arguments, Litostroj notes that the 2009 Opinion, after laying out the relevant facts and procedural history, spends the next eight pages analyzing the forum selection clause, but never once references conditional dismissal or the Timing Condition. Instead, the Timing Condition is first introduced in a footnote within the *forum non conveniens* analysis, which states that some courts "dismissing cases for improper venue under *forum non conveniens* have, when appropriate, conditioned such dismissal on the wavier of certain defenses and acceptance of certain other stipulations." In re I.E. Liquidation, 2009 WL 1586706, at *11 n.4. Additionally, Litostroj notes that all of the cases cited in the 2009 Opinion allowing for the imposition of conditions on a claim's dismissal did so under the auspices of *forum non conveniens*. Therefore, Litostroj argues that the Timing Condition only applies to claims dismissed solely under *forum non conveniens*, and any other holding is an after-the-fact rewrite of the 2009 Opinion.

Debtor argues the opposite, stating that the clear text of the 2009 Opinion illustrates that the Timing Condition applies to all dismissed counts, no matter the underlying legal reasoning. Importantly, the Timing Condition states that "[Litostroj] agrees to allow . . . [Debtor] to amend its complaint here to reinstate *those counts dismissed by these orders* if at any point it appears that a final order cannot or will not be rendered . . . within four years." (emphasis added). The text of the Timing Condition does not reference the legal reason for a count's dismissal, only that the 2009 Opinion and order dismissed the count. Debtor also argues that Litostroj's proffered interpretation of the 2009 Opinion leads to an absurd result. For example, if the Timing Condition only applies to the counts dismissed under *forum non conveniens*, then the court, immediately after issuing the 2009 Opinion specifically allowing for the reinstatement of certain claims under certain conditions, divested itself of the ability to reclaim jurisdiction over the Hydro Case. However, Litostroj notes that the 2009 Opinion dealt with two separate factual circumstances, the Hydro Case and the Besy Case. Because the 2009 Opinion dismissed the Besy Case solely under *forum non conveniens*, the Timing Condition allows this court to reevaluate Besy Case jurisdiction, leaving the Timing Condition with some applicability. Debtor finds this reasoning unpersuasive, as the amount of money at stake in the Hydro Case is ten times larger than the Besy Case, making it unlikely that the court only intended to divest itself of jurisdiction over the larger and more important claims.

The court's analysis starts with the text of the 2009 Opinion. Trial courts are given wide discretion when interpreting and enforcing their own prior opinions and orders. Century Indem.

5

Co. v. Special Metals Corp. (In re Special Metals Corp.), 360 B.R. 244, 247 (Bankr. E.D. Ky. 2006); see also Whitney Bank v. SCC Kyle Partners, Ltd. (In re SCC Kyle Partners, Ltd.), 518 B.R. 393, 404 (Bankr. W.D. Tx. 2014). If a court's interpretation of its own order or opinion is appealed, the reviewing court applies an abuse of discretion standard. Stuart v. Mendenhall (In re Mendenhall), 572 Fed. App'x 858, 861 (11th Cir. 2014); Schwab v. Oscar (In re SII Liquidation Co.), 517 B.R. 72, 75–76 (B.A.P. 6th Cir. 2014); In re Special Metals Corp., 360 B.R. at 247. "The abuse of discretion standard allows for a range of choice for the court, so long as that choice does not constitute a clear error of judgment." In re Mendenhall, 572 Fed. App'x at 861. A deferential standard is appropriate because the trial judge "is in the best position to clarify any apparent inconsistencies" with his previous rulings. Id. (internal quotations marks omitted).

Courts often turn to rules of statutory construction when interpreting their own prior opinions and orders. See Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.), 456 F.3d 668, 676 (6th Cir. 2006); Lefkowitz v. Mich. Trucking LLC (In re Gainey Corp.), 447 B.R. 807, 818–19 (Bankr. W.D. Mich. 2011); In re Old CarCo LLC, 2010 WL 9461648, at *10–11 (S.D.N.Y. 2010) (enforcing a prior court order in accordance with its "clear and unmistakable" language); In re SCBA Liquidation, Inc., 485 B.R. 153, 159 (Bankr. W.D. Mich. 2012). The first step in statutory interpretation is to give rise to the plain text of the statute, Ford Motor Co. v. United States, 768 F.3d 580, 587 (6th Cir. 2014), or in the current case, the plain text of the prior opinion and order. Courts evaluate a statute's meaning in light of the surrounding language, and the same analysis should apply to a court opinion. See Deal v. United States, 508 U.S. 129, 132 (1993) (holding that it is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used"). If the statute remains unclear, courts turn to the Congressional intent behind the statute. Dolan v. U.S. Postal Serv., 546 U.S. 481, 486 (2006); Ford Motor Co., 768 F.3d at 587. Uncovering true Congressional intent is often difficult, as many opposing viewpoints may be rolled into a single statute. See Lamie v. U.S. Tr., 540 U.S. 526, 539–40 (2004) ("These competing interpretations of the legislative history make it difficult to say with assurance whether petitioner or the Government lays better historical claim to the congressional intent."); Frank Easterbrook, Statutes' Domain, 50 U. Chi. L. Rev. 533, 547 (1983) ("Because legislatures comprise many members, they do not have 'intents' or 'designs,' hidden yet discoverable."). Luckily for the court, and a benefit not present in most statutory interpretation cases, the court is in the rare position of knowing what it was thinking when issuing the 2009 Opinion.

Turning to the specific language of the 2009 Opinion and associated order. First, the portion of the 2009 Opinion dealing with the forum selection clause makes no reference to the Timing Condition. The *forum non conveniens* portion of the 2009 Opinion only makes one brief reference to the Timing Condition, placed within a footnote. The next reference to the Timing Condition occurs under the "Conclusion" heading, in a sub heading titled "Conditional Dismissal." As a conclusion is a summary of an entire writing, any legal reasoning within the conclusion likely applies to the entire document. The Conclusion states that "it has been the practice of courts granting dismissals on the ground of *forum non conveniens* to impose conditions to protect the interests of the plaintiff, which generally include, but are not limited to, waiver of service, jurisdictional, and statute of limitations defenses." In re I.E. Liquidation, Inc., 2009 WL 1586706, at *14. This passage, taken in insolation, suggests that the Timing Condition

applies only to counts dismissed under *forum non conveniens*. However, the Timing Condition in the 2009 Opinion states that "[Litostroj] agrees to allow this Court to resume adjudication of this matter and permit [Debtor] to amend its complaint here to *reinstate those counts dismissed by these orders* if at any point it appears that a final order cannot or will not be rendered in the courts of Quebec within four years." Id. at *15 (emphasis added). This passage does not reference claims dismissed under *forum non conveniens* or the forum selection clause, but instead all "counts dismissed by these orders." The order effectuating the 2009 Opinion is near verbatim, stating that "[Litostroj] agrees to allow this Court to resume adjudication of this matter and permit [Debtor] to amend its complaint here to *reinstate those counts dismissed by these orders* if at any point it appears that a final order cannot or will not be rendered in the courts of Quebec within four years from the entry of this order." (emphasis added). The explicit wording of the Timing Condition makes no distinction based on the underlying reason for the claim's dismissal. While the court believes the text of the 2009 Opinion strongly suggests that the Timing Condition applies to all counts dismissed by the opinion, the court notes some ambiguity.

Because at least some ambiguity exists, the court will evaluate its own intent when drafting the 2009 Opinion. As made clear in the conclusion, the court was concerned with the effect the dismissal of Debtor's claims would have on Debtor and Debtor's creditors. Specifically, the court noted that many of Debtor's assets sit in a liquidating trust pending the outcome of the present litigation. It is in the best interest of Debtor's creditors that the underlying litigation be handled quickly and efficiently, allowing for timely asset distribution. While the 2009 Opinion ultimately concluded that litigation in Canada is more appropriate, in large part due to the costs associated with a bilingual trial, the court nevertheless put certain protections in place. The Timing Condition is one such protection. If the Timing Condition applies to claims dismissed solely under *forum non conveniens*, then the Besy Case, with potential damages of approximately $1,200,000.00 may return to the United States, but the Hydro Case, with potential damages exceeding $11,000,000.00, must remain in Canada. The court's concerns about fairness to Debtor and Debtor's creditors would be severely undercut if the court were to adopt Litostroj's reading of the 2009 Opinion. The court intended to allow for the reevaluation of jurisdiction over all of Debtor's claims under appropriate circumstances, and the text of the 2009 Opinion and Timing Condition reinforces this point.

Litostroj makes another ultimately unpersuasive argument, stating that because each citation in the 2009 Opinion in support of conditional dismissal cites a case analyzing *forum non conveniens*, this is evidence of the court's intent to only apply the Timing Condition to counts dismissed under *forum non conveniens*. However, a court's citations to one line of case law is not normally an indication that other related lines of law do not exist. While it is true that courts are more likely to place conditions on a claim dismissed under *forum non conveniens*, many courts have also placed conditions on the dismissal of a claim under a forum selection clause. Acciai Speciali Terni USA, Inc. v. M/V Berane, 181 F.Supp.2d 458, 464–65 (D. Md. 2002); Bison Pulp & Paper Ltd. v. M/V Pergamos, 1995 WL 880775, at *17 (S.D.N.Y. 1995); Frediani & Delgreco, S.P.A. v. Gina Imports, Ltd., 870 F.Supp. 217, 221 (N.D. Ill. 1994); see also Lien Ho Hsing Steel Enter. Co. v. Weihtag, 738 F.2d 1455, 1461–62 (9th Cir. 1984). Therefore, while the cases cited within the 2009 Opinion supporting conditional dismissal did so under *forum non conveniens*, the failure to cite similar cases analyzing a forum selection clause does not suggest that the Timing Condition only applies to claims dismissed solely under *forum non conveniens*.

7

Both parties also cite to the "law of the case" doctrine, which prevents parties from relitigating issues previously determined by the same court in the same case. JGR, Inc. v. Thomasville Furniture Indus. Inc., 505 Fed. A'ppx 430, 435 (6th Cir. 2012); Hanover Ins. Co. v. Am. Eng'g Co., 105 F.3d 306, 312 (6th Cir. 1997); Kimberlin v. Quinlan, 199 F.3d 496, 500 (D.C. Cir. 1999) ("[T]he *same* issue presented a second time in the *same* case in the *same court* should lead to the *same result*." (internal quotation marks omitted)). "Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." Static Control Components, Inc. v. Lexmark Int'l, Inc., 697 F.3d 387, 400 (6th Cir. 2012) (internal quotation marks omitted). The law of the case doctrine is "directed at a court's common sense and is not an inexorable command." Hanover Ins., 105 F.3d at 312. This doctrine does not benefit Debtor or Litostroj. The parties are not relitigating an issue, or asking the court to change a previous ruling, but are instead asking for clarification on what the court previously determined. A court's reasoned interpretation of its own prior opinion is not an impermissible rewrite that violates the law of the case doctrine. Based on the above reasoning, the Timing Condition applies to all counts dismissed by the 2009 Opinion and associated order.

### II. The Elements of Res Judicata are not Satisfied

Under the law espoused by the Sixth Circuit, res judicata encompasses two distinct legal doctrines: claim preclusion and issue preclusion. Gen. Elec. Med. Sys. Europe v. Prometheus Health, 394 Fed. A'ppx 280, 283 (6th Cir. 2010); Graves v. Mahoning Cnty., 2015 WL 403156, at *7 (N.D. Ohio 2015). "Claim preclusion forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." Prometheus Health, 394 Fed. A'ppx at 283. (internal quotation marks omitted). "In contrast, issue preclusion bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." Id. (internal quotation marks omitted). "Both issue and claim preclusion serve the necessary function of conserving judicial and litigant resources and minimize the possibility of inconsistent decisions." Corzin v. Fordu (In re Fordu), 201 F.3d 693, 703 (6th Cir. 1999). A trial court is granted wide discretion when making any res judicata determination. Klein v. Comm'r, 880 F.2d 260, 264 (10th Cir. 1989). As the parties have raised both issue and claim preclusion, the court will analyze each below.

#### A. The Elements of Issue Preclusion are Not Satisfied

Federal issue preclusion applies when a party attempts to give preclusive effect to a previous federal court ruling. Hamilton's Bogarts, Inc. v. Michigan, 501 F.3d 644, 650 (6th Cir. 2007). Federal Sixth Circuit issue preclusion applies if the following elements are satisfied:

1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
2) determination of the issue must have been necessary to the outcome of the prior proceeding;
3) the prior proceeding must have resulted in a final judgment on the merits; and

8

4) the party against whom estoppel is sought must have had a full
and fair opportunity to litigate the issue in the prior proceeding.

Prometheus Health, 394 Fed. A'ppx at 283; United States v. Cinemark USA, Inc., 348 F.3d 569, 583 (6th Cir. 2003). "The essential test in determining whether [issue preclusion] is to be applied is whether the party against whom the prior judgment is being asserted had full representation and a full and fair opportunity to litigate that issue in the first action." W. Reserve Area Agency on Aging v. Mitchell (In re Mitchell), 2014 WL 6633033, at *4 (Bankr. N.D. Ohio 2014) (internal quotation marks omitted); see also Montana v. United States, 440 U.S. 147, 153 (1979) ("A final judgment on the merits bars a subsequent action between the same parties . . . over the same cause of action.").

### 1. The Issues Raised in the 2009 Opinion are Different than the Issues Currently Before the Court

The court first addresses whether the same "precise issue" is before the court in the 2009 Opinion and in the current decision. Litostroj's initial argument is that the Timing Condition's applicability to the forum selection clause could not have been previously before the court, as the 2009 Opinion only discussed the Timing Condition in relation to *forum non conveniens*. As noted above, the Timing Condition applies to all claims dismissed by the 2009 Opinion. Litostroj's more persuasive argument is that the potential reinstatement of Debtor's claims could not have been before the court in the 2009 Opinion, as the previous opinion dealt only with the initial dismissal. In contrast, Debtor believes the 2009 Opinion actively litigated the dismissal of Debtor's claim under *forum non conveniens* and the forum selection clause, making the applicability of the Timing Condition an issue previously decided. Therefore, because the Timing Condition allows Debtor's claims to move back to the United States under certain conditions, and those conditions are now satisfied, Litostroj is precluded from arguing otherwise.

When determining if two claims are part of the same "precise issue," courts apply the "identity of claims" test, which looks to whether "the claims arose out of the same transaction or series of transactions, or whether the claims arose out of the same core of operative facts." Sidney Coal Co., Inc. v. Massanari, 221 F.Supp.2d 755, 775–76 (E.D. Ky. 2002) (quoting Browning v. Levy, 283 F.3d 761 (6th Cir. 2002)); Hobart Corp. v. Dayton Power & Light Co., 997 F.Supp.2d 835, 849 (S.D. Ohio 2014). However, simply because factual and evidentiary overlap exists does not automatically satisfy the test. Sidney Coal, 221 F.Supp.2d at 775–76. Instead, the decision should "be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Id.; see also United States v. Gurley, 43 F.3d 1188, 1196 (8th Cir. 1996).

Even when two claims have significant factual overlap, if sufficient distinguishing factors exist, the same "precise issue" may not be before the court. Hobart Corp., 997 F.Supp.2d at 849; Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1398–99 (9th Cir. 1992); Benisek v. Mack, 11 F.Supp.3d 516, 521–22 (D. Md. 2014); Hivner v. Active Elec., Inc., 878 F.Supp.2d 897, 904 (S.D. Ohio 2012); Edelman v. McMullin Orchards (In re Silver Mill Frozen Foods, Inc.), 32 B.R.

9

783, 787 (Bankr. W.D. Mich. 1983). For example, in Hobart Corp., the Sixth Circuit was asked to determine if litigation surrounding two Environmental Protect Agency ("EPA") reports concerning pollution at the same location against the same party created issue preclusion problems. 997 F.Supp.2d 835. The defendant argued that its liability for environmental pollution was previously litigated in connection with the first EPA report, while the plaintiff argued that the new EPA report imposed different obligations, creating new liabilities that could not have been previously litigated. Id. at 847. The Sixth Circuit agreed with the plaintiff, concluding that while significant evidentiary overlap existed,[1] the most recent EPA report imposed new environmental liabilities making the evidence necessary to support the new claims materially different from that presented in the previous litigation. Id. at 849. The passage of a significant amount of time between claims may also be sufficient to defeat issue preclusion, as long as the difference in time materially affects the evidence presented at trial. See S. Delta Water Agency v. U.S. Dept. of the Interior, Bureau of Reclamation, 767 F.2d 531, 538–39 (9th Cir. 1985) (holding that litigation determining that a party's operation of a hydraulic dam twenty years earlier was lawful does not preclude a party from litigating whether that same party's current operation of the dam is unlawful); see also Georgia-Pacific Consumer Prods. LP v. Four-U-Packing, Inc., 701 F.3d 1093, 1100 (6th Cir. 2012) (holding that significantly "changed conditions may create a new cause of action" not subject to issue preclusion). Similarly, claims that could not have been raised in the prior litigation are not the same issue. Hobart Corp., 997 F.Supp.2d at 849; Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 211 (4th Cir. 2009); Hivner, 878 F.Supp.2d at 904; Glenwood Farms, Inc. v. O'Connor, 666 F.Supp.2d 154 (D. Me. 2009). For example, in Glenwood Farms, the plaintiff's first action sought damages associated with the disintegration of his attorney-client relationship. 666 F.Supp.2d at 175. After completing the first case, the plaintiff discovered concealed documents related to the prior litigation that created new causes of action. Id. Because the plaintiff could not have brought the claim in the first action, the court denied issue preclusion, concluding that the same issue was not before the court. Id.

In the current case, significant factual and evidentiary overlap exists between the 2009 Opinion and the current dispute. Both disputes spring from Debtor's breach of contract claims against Litostroj. Both disputes analyze the proper litigation forum, likely relying on much of the same evidence. However, as discussed above, factual and evidentiary overlap is not the sole determinative factor. Over five years have passed since the 2009 Opinion, likely creating significant new evidence relevant to the court's forum determination. S. Delta Water Agency, 767 F.2d at 538–39; see also Ohio Valley Envtl. Coal., 556 F.3d at 211. Additionally, a party cannot argue for a claim's reinstatement at the same time that claim is being dismissed, and courts are hesitant to apply issue preclusion to claims that could not have been previously raised. Hobart Corp., 997 F.Supp.2d at 849; S. Delta Water Agency, 767 F.2d at 538–39. The existence of the Timing Condition also weighs heavily against the application of issue preclusion. While there is little case law analyzing the intersection between issue preclusion and conditional dismissal, the Fourth Circuit briefly commented on the issue. In Ohio Valley Environmental Coalition, the plaintiff and defendant were involved in an environmental dispute dealing with government permits. 556 F.3d 177. The parties eventually agreed to, and the district court approved, a settlement dismissing most of plaintiff's claims, but conditioning the dismissal on plaintiff's reservation of the ability to challenge future permit determinations. Id. at 210–11.

---

[1] The Sixth Circuit noted that parties in each case will need to show the release of a hazardous substance, that the release caused the plaintiffs to incur response costs, and that each defendant is responsible for the pollution.

10

After the settlement, additional permits were issued, and the plaintiff filed a new lawsuit. Id. The defendant moved to dismiss the new claims under res judicata, arguing that the permit litigation was previously completed. Id. The Fourth Circuit rejected the defendant's argument, refusing to apply issue preclusion to the newly issued permits, holding that a prior judgment "cannot be given the effect of extinguishing claims which did not even then exist." Id. at 211 (quoting Lawlow v. Nat'l Screen Serv. Corp., 349 U.S. 322, 328 (1955) (internal quotation marks omitted)). This reasoning is especially true when a court explicitly allows future actions through conditions placed on a claim's dismissal. In the 2009 Opinion, the court dismissed Debtor's claims, but allowed the claims to be reinstated under certain conditions. After satisfying the conditions, Debtor filed a motion to return jurisdiction to the United States. A claim's conditional dismissal, and the claim's reassessment once the conditions are satisfied, are not the same issue. See Ohio Valley Envtl. Coal., 556 F.3d at 211; Hobart Corp., 997 F.Supp.2d at 849; Hivner, 878 F.Supp.2d at 904. If issue preclusion prevents a claim's reevaluation when explicitly allowed by the court, then a conditional dismissal often becomes a straight dismissal, eviscerating the attached conditions. The court rejects such a position. When a court sets a time frame to reevaluate an issue, the court's original determination is not binding on the reevaluation.

Debtor raises one last argument, placed in the form of a hypothetical, in an attempt to sway the court. Debtor puts forward the following situation: "[A]ssume the Office of the U.S. Trustee contested appointment of a proposed debtor's counsel based on a specific conflict. Assume further that the bankruptcy judge allowed the retention but also ruled that counsel must file supplemental disclosures every three months." (Reply of I.E. Liquidation, Inc. Pursuant to Agreed Scheduling Order 3, ECF No. 62). According to Debtor, if issue preclusion does not apply in the current case, Litostroj's reasoning would leave the bankruptcy court's requirement for supplemental disclosures open to litigation. The court disagrees. In Debtor's example, the court issued an order explicitly requiring the debtor's counsel to file certain supplemental disclosures. A window for discretion was not left open. In contrast, the 2009 Opinion allows the court to reclaim jurisdiction only if certain events occur and the balance of factors favoring litigation in one forum over another also changes. Specifically, the text of the 2009 Opinion allows the court to "revisit[] the determination of whether the balance of public and private interest factors favor litigation in Quebec" or the United States. The discretion inherent in the court's conditional dismissal is the source of potential future litigation. The mandatory versus permissive nature of each order distinguish the Timing Condition from Debtor's hypothetical. Based on all of the above reasoning, the same "precise issue" is not before the court, making issue preclusion inapplicable.

### B. The Elements of Claim Preclusion are not Satisfied

Debtor also argues for application of claim preclusion, which "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." Prometheus Health, 394 Fed. A'ppx at 283. Under Sixth Circuit law, claim preclusion requires the satisfaction of the following four elements:

> (1) there is a final decision on the merits in the first action by a court of competent jurisdiction;

11

> (2) the second action involves the same parties, or their privies, as the first;
> (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and
> (4) there is an identity of claims between the first and second actions.

Heike v. Cent. Mich. Univ. Bd. Of Trs., 573 Fed. A'ppx 476, 480 (6th Cir. 2014); Hapgood v. City of Warren, 127 F.3d 490, 493 (6th Cir. 1997). While issue and claim preclusion are separate legal doctrines, they are often lumped together under the "res judicata" heading and are confused and conflated by attorneys and courts alike. Heyliger v. State Univ. & Cmty. Coll. Sys. of Tenn., 126 F.3d 849, 851 (6th Cir. 1997). Such confusion is in some ways understandable, as certain elements between the two doctrines are similar. The third element of claim preclusion is very similar to the first element under issue preclusion, as both require the second action to raise "an issue actually litigated" in the prior proceeding. See Bear v. Delaware Cnty., Ohio, 2014 WL 6808981, at *4 (S.D. Ohio 2014). Additionally, element four requires an identity of claims, which is determined based on whether "the facts and events creating the right of action and the evidence necessary to sustain each claim are the same," essentially identical to the first element of issue preclusion. Heike, 573 Fed. A'ppx at 482–83; see also United States v. Tohono O'odham Nation, 131 S.Ct. 1723, 1730 (2011). Therefore, based on the same reasoning as issue preclusion, the court finds that the fourth element of claim preclusion is not satisfied, making claim preclusion inapplicable.

### III. Collateral Attack Is not Applicable to the Current Situation

Debtor also argues that Litostroj is attempting to collaterally attack the 2009 Opinion by advocating an interpretation clearly at odds with the text of the decision. Litostroj disagrees, noting that it is only asking the court to interpret its prior opinion. According to the Sixth Circuit, "the collateral attack doctrine precludes litigants from collaterally attacking the judgments of *other* courts." Hobart Corp., 997 F.Supp.2d at 850 (quoting Rein v. Providian Fin. Corp., 270 F.3d 895, 902 (9th Cir. 2001) (internal quotation marks omitted)). "A collateral attack is a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court." Pratt v. Ventas, Inc., 365 F.3d 514, 519 (6th Cir. 2004).[2] While the current dispute involves changes in jurisdiction between the United States and Canada, the parties to the current litigation have not challenged any Canadian rulings before this court. Instead, Debtor attempts to use the collateral attack doctrine to challenge a previous determination by this same court in this same case, a use for which the collateral attack doctrine cannot be used. See Hobart Corp., 997 F.Supp.2d at 850. The court's rejects Debtor's attempted use of the collateral attack doctrine to prevent this court from interpreting its own prior opinion and order.

---

[2] The collateral attack doctrine is sometimes used to prevent challenges to a court's previous decisions, even if the challenge is filed in the same court. JGR, Inc. v. Thomasville Furniture Industries, Inc., 505 Fed. A'ppx 430, 434 (6th Cir. 2012); Black & White Children of the Pontiac Sch. Sys. v. Sch. Dist. of City of Pontiac, 464 F.2d 1030, 1030–31 (6th Cir. 1972). However, courts allowing the use of collateral attack in the same court involve the filing of a separate case, not a motion within the same case.

### IV.     Atlantic Marine Is More Applicable Later in the Litigation

The last argument the court will address is both parties' citations to the Supreme Court decision of Atlantic Marine Construction Co. v. U.S. District Court for the Eastern District of Texas, a case analyzing the proper procedural method for transferring venue pursuant to a valid forum selection clause. 134 S.Ct. 568 (2013). Generally, when a forum selection clause requires a case's transfer from one federal court to another, the procedural method for effectuating the transfer is found within 28 U.S.C. § 1404(a). Id. at 579–80. However, when a forum selection clause points to a foreign forum, the transfer should be effectuated via *forum non conveniens*. Id. Simply because the Supreme Court determined that *forum non conveniens* is the proper procedural method for transferring a case to a foreign venue under a forum selection clause does not suggest the 2009 Opinion applies only to claims dismissed under *forum non conveniens*. Outside the procedural aspects, Atlantic Marine also outlines a heightened standard necessary to defeat the agreed upon litigation location from a valid forum selection clause. Id. at 581–84. While this new standard will likely be relevant if the court is required to reevaluate the factors underlying the forum selection clause and *forum non conveniens* analysis, the focus of this opinion is limited to the above stated threshold issues.

### Conclusion

Based on the above reasoning, the threshold issues raised by Debtor and Litostroj do not dispose of Debtor's Amended Motion to Reinstate Counts Dismissed by Prior Order of This Court and Resume Adjudication of Adversary Proceeding in This Court. The court will schedule a status conference to discuss the next steps in the litigation.

It is so ordered.

#     #     #

**Service List**:

**Jeffrey T. Golenbock**
Golenbock, Eiseman, Assor, Bell & Peskoe
437 Madison Ave
New York, NY 10022

**Dov Frankel**
Taft Stettinius & Hollister LLP
200 Public Square
Suite 3500
Cleveland, OH 44114

**Harry W. Greenfield**
600 Superior Ave E
Suite 1400
Cleveland, OH 44114

**Sean Malloy**
McDonald Hopkins LLC
600 Superior Avenue East, Suite 2100
Cleveland, Ohio 44114

**Rocco I. Debitetto**
c/o Hahn Loeser + Parks LLP
200 Public Square
Suite 2800
Cleveland, OH 44114-2301