**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 10:54 AM September 10, 2015**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| I.E. LIQUIDATION, INC., | ) | CASE NO. 06-62179 |
| | ) | |
| Debtor. | ) | ADV. NO. 08-6077 |
| _____ | ) | |
| | ) | JUDGE RUSS KENDIG |
| I.E. LIQUIDATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OF OPINION (NOT** |
| | ) | **INTENDED FOR PUBLICATION)** |
| LITOSTROJ HYDRO, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Currently before the court is I.E. Liquidation, Inc.'s ("Debtor") motion to reinstate various counts against Litostroj Hydro, Inc. ("Litostroj") in the United States Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court"). This adversary case originated in the Bankruptcy Court in 2008, but was transferred to the courts of Quebec, Canada in 2009. The litigation currently remains ongoing in Canada. Based on the court's analysis, litigation in Canada is legally required.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

1

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

**Facts**

Ideal Electric Company ("Ideal") was a company headquartered in Mansfield, Ohio primarily involved in the manufacture and sale of medium power generators for gas, steam, and hydroelectric turbines. Ideal successfully operated for over one hundred years, but a confluence of economic factors forced the company into bankruptcy in 2006. Debtor is the remaining entity that holds Ideal's litigation rights. Litostroj is a Canadian company involved in the design and implementation of hydroelectric power solutions.

On October 29, 2006, Ideal filed a voluntary chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Ohio. The current adversary, filed on June 20, 2008, stems from contracts between Ideal and Litostroj, where Ideal agreed to design, build, and install a number of hydroelectric generators at certain Litostroj power generation facilities in Canada. The total contract payments were in excess of seventeen million dollars, payable in installments at certain design and construction milestones. However, according to Debtor, Litostroj's contract payments were consistently late or never made, a significant factor in Ideal's bankruptcy. Debtor seeks damages in excess of eleven million dollars for Litostroj's alleged breach of contract and violation of the implied covenant of good faith and fair dealing.[1]

Shortly after case commencement in the Bankruptcy Court, Litostroj moved to transfer the litigation to the courts of Quebec, Canada, based on a valid and enforceable forum selection clause selecting Canada as the proper litigation forum.[2] Litostroj also argued that litigation in Canada is more efficient and less expensive than the United States, requiring transfer under the legal doctrine of *forum non conveniens*. Debtor opposed the motion, requesting that the adversary case remain in the United States. The court decided the matter in an opinion dated March 18, 2009 (the "2009 Opinion"), determining that a valid and enforceable forum selection clause points to Canada as the proper litigation forum. I.E. Liquidation, Inc. v. Litostroj Hydro, Inc. (In re I.E. Liquidation, Inc.), 2009 WL 1586706 (Bankr. N.D. Ohio 2009). The court also dismissed the case under *forum non conveniens*, holding that a balancing of public and private interest factors favor Canadian litigation. Id. The court emphasized the expenses associated with French-to-English translations, as significant documentary evidence and oral testimony would be in French. The courts of Quebec, Canada are bilingual in both French and English, essentially eliminating a considerable expense factor present in the United States. However, the Bankruptcy Court placed conditions on the dismissal of Debtor's claims, allowing a reevaluation of jurisdiction if the Canadian litigation did not move forward with sufficient speed. Id. at *14–15. Specifically, the Bankruptcy Court reserved the ability to reevaluate the proper litigation forum if

---

[1] A more detailed factual background can be found in the court's previous decision. In re I.E. Liquidation, 2009 WL 1586706.

[2] The forum selection clause, after being translated from French into English, reads as follows: "The parties agree that the contract has been executed in Montreal and is subject to the laws of the province of Quebec and any judicial procedure will be undertaken in the Montreal court system." In re I.E. Liquidation, 2009 WL 1586706, at *4.

2

"at any point it appears that a final order cannot or will not be rendered in the courts of Quebec within four years from the date of the [2009 Opinion]." Id. at *15.

As of the writing of the current opinion, over six years have passed since the issuance of the 2009 Opinion, and a final resolution in Canada appears at least an additional five years away. On November 24, 2014, Debtor moved the Bankruptcy Court to reclaim jurisdiction, arguing that the lack of progress in Canada justifies transfer back to the United States. Litostroj opposes the motion, arguing that even though the litigation is moving slowly, the factors favoring Canadian litigation expressed in the 2009 Opinion continue to outweigh any reasons favoring a transfer to the United States. Both Debtor and Litostroj raised potentially determinative threshold arguments, but the court, in an opinion dated April 1, 2015, decided neither threshold issue disposed of Debtor's transfer motion. I.E. Liquidation, Inc. v. Litostroj Hydro, Inc. (In re I.E. Liquidation, Inc.), 2015 WL 1568248 (Bankr. N.D. Ohio 2015). Therefore, as specifically allowed by the 2009 Opinion, the court will reevaluate the proper forum for Debtor's adversary case against Litostroj.

The court signed an agreed scheduling order on May 21, 2015, noting that oral arguments may be scheduled at the court's discretion to further discuss the current issues. Neither party has requested oral arguments and the court believes the briefs adequately frame the issue. Therefore, the court will not hold oral arguments and will decide the matter based on the provided briefing.

## Law & Analysis

The current adversary case has been winding through the courts of the United States and Canada for over seven years. Debtor filed the current adversary case in June of 2008, and less than a year later, in the 2009 Opinion, the Bankruptcy Court determined that the litigation should proceed in Canada. In the time between the 2009 Opinion and today, the Supreme Court of the United States issued an opinion making it significantly more difficult for a party to overcome the litigation forum identified in a valid forum selection clause. Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 134 S. Ct. 568 (2013). Specifically, the Supreme Court stated that a valid and enforceable forum selection clause should be enforced "unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." Id. at 568. Nevertheless, Debtor moves the Bankruptcy Court to override the forum selection clause and reinstate the litigation in the United States.

In a case without a valid forum selection clause, a court determines the proper litigation location by considering a number of public and private interest factors, such as litigation costs, convenience to counsel and witnesses, where the case was initially filed, the forum's connection to the litigation, among others. Id. at 581. However, if a forum selection clause exists, the court's analysis changes in three meaningful ways. Id. First, "the plaintiff's choice of forum merits no weight." Id. By signing a contract specifying a certain forum for future litigation, the plaintiff already exercised its "venue privilege," presumably receiving binding promises in return. Id. Second, all private interest factors are deemed to weigh in favor of the forum contained within the forum selection clause. Id. Examples of private interest factors include: "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view

3

would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive." Id. at n.6. Instead, the court may only consider public interest factors, which include: the enforceability of any judgment rendered by another court, "the administrative burden of piling up litigation in congested courts, the burden of imposing jury duty on members of a community with little relation to the litigation, the interest of a community in having localized controversies litigated locally, and the appropriateness of trying diversity cases in a forum most at home with the governing law." In re I.E. Liquidation, 2009 WL 1586706, at *10 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)); see also Gordon v. Houghton Mifflin Hardcourt Publ'g Co., 2015 WL 3871788, at *6–7 (E.D. Pa. 2015). Third, when a party files suit in one forum, but a forum selection clause points elsewhere, any transfer will not carry the original venue's choice-of-law rules. Atlantic Marine, 134 S. Ct. at 582.

In adopting the above rules favoring the enforcement of a valid forum selection clause, the Supreme Court reasoned that such contract terms "represents the parties' agreement as to the most proper forum" and "may have figured centrally in the parties' negotiations." Id. at 581–83. Therefore, courts should refrain from unnecessarily disrupting settled contractual expectations by overruling a valid forum selection clause. Id. at 583. Towards this end, the Supreme Court set a high standard for defeating a forum selection clause, requiring the clause be "given controlling weight in all but the most exceptional cases." Id. at 581; GDG Acquisitions, LLC v. Gov't of Belize, 749 F.3d 1024, 1028 (11th Cir. 2014) ("[A]n enforceable forum-selection clause carries near-determinative weight in the analysis."). In practice, after Atlantic Marine, the overwhelming majority of courts have applied the forum contained within a valid and enforceable forum selection clause. See, e.g., Reagan v. Maquet Cardiovascular U.S. Sales LLC, 2015 WL 521049 (N.D. Ohio 2015); Mosing v. Boston, 2015 WL 3911798, at *9–10 (W.D. La. 2015); PolyOne Corp. v. Teknor Apex Co., 2014 WL 4207671, at *6 (N.D. Ohio 2014); Harper Cnty. Comm'n of Kan. v. Flat Ridge 2 Wind Energy LLC, 2014 WL 4377750 (Bankr. D. Kan. 2014).

When a valid and enforceable forum selection clause exists, the party seeking to override the clause bears "the heavy burden of showing that the public interest factors overwhelmingly disfavor a transfer." Mosing, 2015 WL 3911798, at *9 (quoting Atlantic Marine, 134 S. Ct. at 598). A trial court's forum determinations are reviewed for an abuse of discretion. Smith v. Aegon Cos. Pension Plan, 769 F.3d 922, 933 (6th Cir. 2014).

### I. Exceptional Circumstances Do Not Warrant Overriding the Forum Selection Clause

Debtor argues that, even with the heightened standard espoused by the Supreme Court in Atlantic Marine, the Bankruptcy Court should nevertheless override the forum selection clause, transfer jurisdiction back to the United States, and proceed to trial as quickly as possible. First, Debtor argues that the congestion of the Canadian courts, evidenced by the litigation being in Canada for six years and a final resolution remaining an additional five years away, significantly weighs in favor of quicker United States litigation. Similarly, because the United States allocates more daily hours to courtroom litigation than Canada,[3] a United States trial will span fewer days, further reducing court congestion and litigation costs. The quicker United States litigation is

---

[3] Canadian trial days consist of 4.5 hours of in-court time, while the Bankruptcy Court would likely allocate approximately six hours, or more, per day to in-court time.

4

especially important for a group of twenty-five Ideal retirees who are approximately eighty years old, a group with a pressing need for a timely resolution. Debtor also uses a significant portion of its brief analyzing the intersection of Canadian and United States law, arguing that any judgment of the Bankruptcy Court is enforceable in Canada. Finally, Debtor argues that the public has an interest in the efficient administration of bankruptcy cases, pulling expense considerations normally excluded as private interest factors under Atlantic Marine back into the court's calculus. In sum, Debtor believes sufficient circumstances exist to warrant a transfer of the present litigation back to the Bankruptcy Court.

Litostroj makes a number of countervailing arguments, with the overarching theme that Debtor has failed to carry its burden of showing the exceptional circumstances necessary to defeat a valid forum selection clause. According to Litostroj, even assuming that United States litigation will be faster than the Canadian litigation, speed is not the only factor in an efficiency calculus, and any potential gains in speed are offset by significant costs. Regarding expenses, Litostroj notes that both parties are currently ready for a Canadian trial and are awaiting the trial date. If the litigation is moved to the Bankruptcy Court, it will create significant additional expenses associated with preparing local trail counsel. Litostroj also notes that, as stressed in the 2009 Opinion, translation expenses are significant. Because one of the issues at trial is the accuracy of the French-to-English translation in the contracts between Ideal and Litostroj, a bilingual Canadian judge is in a much better position to decide the accuracy of any translation. Litostroj also spends a significant amount of its brief arguing that any Bankruptcy Court judgment may not be enforceable in Canada. Finally, Debtor notes that the slow Canadian litigation speed is based, in large part, on Debtor inaction. For example, Debtor failed to request a Canadian case management judge or the recognition of the dispute as a "foreign proceeding," either of which, according to Litostroj, would significantly shorten the Canadian litigation. Litostroj also notes the following previously taken actions intended to reduce the need for an expedited United States trial: (1) in February of 2013 Litostroj decreased its claims against Debtor, allowing for partial creditor distributions out of Debtor's bankruptcy estate; and (2) Debtor's estate assets are held in a trust account with little day-to-day asset diminution.

As the 2009 Opinion already determined that the forum selection clause is valid and enforceable, the court moves to whether Debtor has illustrated "exceptional circumstances" justifying overriding the parties agreed upon litigation forum.[4] First, based on the altered calculus espoused in Atlantic Marine, Debtor's initial choice of the United States as the appropriate forum merits no weight. Additionally, the choice-of-law rules associated with the United States are not transferred to the Canadian litigation. The next step is a balancing of the public and private interest factors, but all private factors are now conclusively deemed to weigh in favor of the forum selection clause location. Atlantic Marine, 134 S. Ct. at 582. Instead, the court may override a forum selection clause only if the public interest factors strongly favor another location. As an indication of Debtor's uphill battle in attempting to override the forum

---

[4] Some courts after Atlantic Marine have not applied the heightened forum selection standard when the forum selection clause is permissive, instead of mandatory. Networld Commc'n Corp. v. Croatie Airlines, D.D., 2014 WL 4724625, at *2 (D.N.J. 2014) (collecting cases). The current forum selection clause is a mandatory provision, stating that "any judicial procedure *will* be undertaken in the Montreal court system." Therefore, court decisions interpreting a permissive forum selection clause are inapplicable. See Residential Fin. Corp. v. Jacobs, 2014 WL 1233089, at *2–3 (S.D. Ohio 2014).

5

selection clause after Atlantic Marine, the court was only able to locate a single case where a court declined to enforce a valid forum selection clause. Bollinger Shipyards Lockport, LLC v. Huntington Ingalls Inc., 2015 WL 65298, at *4 (E.D. La. 2015) (overriding a forum selection clause based on the judge's substantial familiarity with the facts of the case, saving another judge countless hours of background research).

### A. Court Congestion Slightly Favors United States Litigation

According to Debtor, the most significant factor favoring United States litigation is the congestion of the Canadian courts, allowing the Bankruptcy Court to render a final verdict significantly faster. Judicial economy is a commonly evaluated public interest factor allowing courts to transfer jurisdiction based on variations in judicial workload, but courts have been very reluctant to transfer cases based on caseload differences. For example, one court found that a three month delay between the plaintiff's preferred forum and the forum contained within the forum selection clause was "far from the extraordinary circumstances" needed to overrule a forum selection clause. LaBar v. ABC Med. Holdings, Inc., 2014 WL 1714468, at *9 (N.D. Tex. 2014); see also Farrugia v. Novinium, Inc., 2015 WL 874914, at *6 (E.D. Mich. 2015) (holding that judges in one district being approximately 18.5% busier than judges in another district adds only "slight weight" to a forum change request). In international cases, courts consistently hold that litigation speed differences between nations are not sufficiently extraordinary to defeat a forum selection clause. For example, in a case with a forum selection clause pointing to Mexico, but the case was initially filed in the United States, the court noted that even though Mexican litigation would be significantly slower than United States litigation, such circumstances were not sufficiently "rare or unusual" to override the forum selection clause. Russell v. De Los Suenos, 2014 WL 1028882, at *5 (S.D. Cal. 2014).

In a different context, a number of courts have evaluated how long a litigation delay must be before an individual is essentially denied his day in court. See, e.g., Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1228 (3d Cir. 1995); Bancredit Cayman Ltd. v. Santana (In re Bancredit Cayman Ltd.), 2008 WL 5396618, at *4 (Bankr. S.D.N.Y. 2008); Ramakrishna v. Besser Co., 172 F.Supp.2d 926, 929–30 (E.D. Mich. 2001). While these cases deal with the threshold question of whether or not a forum is adequate, instead of the public's interest in court congestion, the court finds the analysis helpful. Because all "courts suffer from delay," anything other than the most extreme delay is rarely the basis for declaring a forum inadequate. Bhatnagar, 52 F.3d 1220; Kyla Shipping Co. v. Shanghai Zhenhua Heavy Indus. Co., 2012 WL 1565634, at *6 (S.D. Al. 2012). Few cases have decided that an international forum is inadequate, and the most prominent case deciding otherwise involved a delay between fifteen and twenty-five years. Bhatnagar, 52 F.3d 1220. Other international courts with lesser, but still significant, delays, were consistently found by United States courts to be adequate international forums. See, e.g., Giglio Sub S.N.C. v. Carnival Corp., 2012 WL 4477504, at *11–12 (S.D. Fla. 2012) (three year delay in Italy); Krish v. Balasubramaniam, 2007 WL 1219281, at *3 (E.D. Cal. 2007) (between seven and ten year delay in India); Eastman Kodak Co. v. Kavlin, 978 F.Supp. 1078, 1085 n.6 (five year delay in Bolivia); In re Bancredit Cayman Ltd., 2008 WL 5396618, at *4 (six to ten year delay in the Dominican Republic). While the adequacy of any alternative forum is made on a case-by-case basis, the vast majority of United States courts to evaluate Canadian tribunals have found them to be adequate. Stewart v. Dow Chem. Co., 865 F.2d 103,

6

106–07 (6th Cir. 1989); see also McNeil v. Stanley Works, 33 Fed. Appx 322, 325 (9th Cir. 2002); Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd., 138 F.3d 624, 629 (6th Cir. 1998); Norcold, Inc. v. Greg Lund Prods. Ltd., 109 F.Supp.2d 819, 828 (S.D. Ohio 2000).

On the whole, the court finds that litigation in the United States, as compared to Canada, would resolve the case faster. While a final Canadian resolution remains approximately five years away, such a delay is a far cry from the fifteen or more years in Bhatnagar, and in line with delays allowed in other international forums.[5] Additionally, business transactions spanning the United States and Canada are common, and the Canadian and American legal systems are rooted in the same common law traditions. See Aristech Chem., 138 F.3d at 628–29; Russell, 2014 WL 1028882, at *5; Kyla Shipping Co., 2012 WL 1565634, at *6. As directed by Atlantic Marine, courts should disrupt a valid forum selection clause only in "exceptional" circumstances, and breach-of-contract litigation in the forum contained with a contractual forum selection clause between sophisticated business entities located in closely intertwined countries is far from exceptional. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9 (1972) ("The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts."); Kyla Shipping Co., 2012 WL 1565634, at *6. However, given the already considerable delays, and the significant amount of time before the scheduled Canadian trial, the court finds that judicial economy slightly favors the United States.

### B. Litigation Costs, If Applicable, Strongly Favor Canadian Litigation

In the 2009 Opinion, which was issued before the Supreme Court's Atlantic Marine decision, the Bankruptcy Court evaluated public and private interest factors before ultimately concluding that Canada was the appropriate forum, with one factor having an outsized impact: translation expenses. After Atlantic Marine, translation expenses are likely a private interest factor deemed to conclusively favor the litigation location contained within a forum selection clause. Waste Mgmt. of La., LLC v. Jefferson Parish, 48 F.Supp.3d 894, 913 (E.D. La. 2014); Lavera Skin Care N. Am., Inc. v. Laverana GmBH & Co., 2014 WL 7338739, at *7–8 (W.D. Wash. 2014). However, Debtor suggests that a bankruptcy court's unique responsibility to protect estate assets transform litigation expenses back into a public interest factor, distinguishing bankruptcy litigation expenses from the normal civil litigation in Atlantic Marine. Specifically, as noted in the 2009 Opinion, bankruptcy courts must be mindful "of the particular responsibilities of bankruptcy courts to take into account not only the interests of the plaintiff and defendant, but also those of the estate and its creditors." In re I.E. Liquidation, 2009 WL 1586706, at *14. Therefore, according to Debtor, based on the unique nature of a bankruptcy court, litigation expenses, including the cost to translate information from French to English, may be evaluated to potentially override a forum selection clause, even after Atlantic Marine.

Under the altered Atlantic Marine analysis, litigation expenses, witness convenience, and the availability of evidence are all private interest factors conclusively deemed to weigh in favor of the location contained in the forum selection clause. Therefore, if the current case were filed

---

[5] There has been a lot of back-and-forth between the parties on who is responsible for the Canadian trial delays, but even assuming that Debtor or Litostroj is completely responsible for any delay (absent a finding of bad faith or malicious actions, neither of which has been shown), such a finding would not change the court's ultimate decision.

outside the bankruptcy context, translation expenses would likely be classified as a private interest factor conclusively deemed to favor Canadian litigation. Outside a statutory fee shifting provision, the "American Rule" states that each party is responsible for its own litigation expenses. Green Party of Tenn. v. Hargett, 791 F.3d 684, 697 (6th Cir. 2015); Warren Drilling Co., v. Equitable Prod. Co., 2015 WL 4032859, at *6–7 (6th Cir. 2015). In a bankruptcy court, litigation expenses are often paid with bankruptcy estate assets, which may result in reduced creditor distributions. See In re Dzierzawski, 518 B.R. 415, 420–21 (Bankr. E.D. Mich. 2014); In re Nicole Energy Servs., Inc., 385 B.R. 201, 232–33 (Bankr. S.D. Ohio 2008); In re Schwartz, 480 B.R. 808, 810–11 (Bankr. W.D. Ky. 2012). However, if a lawsuit's benefit to the bankruptcy estate is greater than the associated litigation costs, a creditor's bankruptcy distributions may instead increase. In re Dzierzawski, 518 B.R. at 420–21. Due in part to the impact specific litigation may have on unrelated estate creditors, bankruptcy judges often must approve the payment of attorney fees and other litigation expenses. 11 U.S.C. § 328–29; Fed. R. Bankr. Pro. 2016. Reinforcing the unique nature of bankruptcy courts, the Sixth Circuit has long held that "a primary purpose of . . . bankruptcy proceedings is to promote the efficient and orderly administration of the [bankruptcy estate] for the benefit of creditors." Fidelity Bank, Nat'l Ass'n v. M.M Grp., Inc., 77 F.3d 880, 882 (6th Cir. 1996); see also In re McInerney, 490 B.R. 540, 548 (E.D. Mich. 2013); In re Strausbough, 421 B.R. 423, 425–26 (Bankr. E.D. Mich. 2009); In re Barman, 252 B.R. 403, 417 (Bankr. E.D. Mich. 2000).

In a different context, under 28 U.S.C. § 1412, bankruptcy courts have often evaluated litigation costs as a public interest factor. In re Barrington Spring House, LLC, 509 B.R. 587, 604 (Bankr. S.D. Ohio 2014). Section 1412 allows any case filed under the United States Bankruptcy Code to be transferred to another bankruptcy court if the transfer is "in the interest of justice or for the convenience of the parties." Similarly, 28 U.S.C. § 1404(a), which the Supreme Court calls a codification of the *forum non conveniens* doctrine for case movement between federal district courts, allows the transfer of a case under essentially the same circumstances: "[f]or the convenience of the parties and witnesses" or "in the interest of justice." Atlantic Marine, 134 S. Ct. at 580. Even though § 1412 and § 1404(a) cover transfer between different federal courts, the analysis "is essentially the same" under either statute. DHP Holdings II Corp. v. Home Depot (In re DHP Holdings II Corp.), 435 B.R. 264, 268–69 (Bankr. D. Del. 2010); Borger Props., Inc. v. Auer Corp., 2010 WL 3932393, at *3 (Bankr. S.D. Tex. 2010) (holding that § 1404(a) and 1412 "promote the same basic tenets"). Therefore, the analysis typically employed by a bankruptcy court under § 1412 is relevant to a *forum non conveniens* analysis. Ohio Bankruptcy courts analyzing forum transfer under § 1412 consistently consider the litigation expenses and the efficient administration of the bankruptcy estate. In re Barrington Spring House, 509 B.R. at 604; Bavelis v. Doukas (In re Bavelis), 453 B.R. 832, 874 (Bankr. S.D. Ohio 2011) ("[C]ourts give the greatest weight to whether the proposed transfer would promote the economic and efficient administration of the bankruptcy estate."). Because bankruptcy courts, when analyzing matters similar to those in Atlantic Marine, evaluate litigation costs as public interest factors, it provides additional support for retaining litigation expenses as a relevant factor in bankruptcy, even in light of a forum selection clause. The court has been unable to locate a bankruptcy decision discussing litigation expenses as a potential public interest factor after Atlantic Marine.

Because any evaluation of litigation expenses only pushes more forcefully against United States litigation, the court need not determine if such expenses are a valid public interest factor after Atlantic Marine. For example, while Debtor claims that translation costs may be less than estimated in the 2009 Opinion, even assuming a significant translation cost reduction, such expenses still represent a substantial outlay not present in Canada. Additionally, both Debtor and Litostroj's Canadian counsel are prepared for trial, and any transfer to the Bankruptcy Court will result in unnecessary trial preparation expenses by United States counsel. While the court is cognizant of the hardship litigation delays may impose on certain Ideal retirees, Debtor's assets are maintained in a trust account not subject to valuation declines due to litigation delays.

### C. Other Public Interest Factors Relevant to the Court's Decision

Outside the litigation expenses and court congestion discussed above, courts also commonly evaluate the following public interest factors: "the local interest in having localized controversies decided at home, the interest in having the trial of a diversity case in a forum that is at home with the law," and a judgment's enforceability in a foreign court. Atlantic Marine, 134 S. Ct. at 581 n.6; Amir v. Pomagalski, 2015 WL 3904570, at *7 (N.D. Ga. 2015); Bollinger Shipyards Lockport, 2015 WL 65298, at *4; Gordon, 2015 WL 3871788, at *6.

Given the international nature of the current dispute, Canada and the United States both have substantial interests in the litigation. Ideal was a company based in the United States, Litostroj is based in Canada, and the generators at issue were built in the United States and are currently installed in Canada. Each country's interest in this factor has not materially changed from the 2009 Opinion, when the court determined the factor to be neutral. In re I.E. Liquidation, 2009 WL 1586706, at *12; see also Karl W. Schmidt & Assocs., Inc. v. Action Envtl. Solutions, LLC, 2014 WL 6617095, at *8 (D. Colo. 2014) (holding that when an issue has ties to multiple forums, one of which is contained within the forum selection clause, each forum's respective interest in the litigation merits little weight).

Additionally, while the forum selection clause appears to apply Canadian law, the court has not yet ruled on the issue. In re I.E. Liquidation, 2009 WL 1586706, at *12. If Canadian substantive law is applied, Canadian courts will be more familiar with, and in a better position to apply, Canadian law. Union Elec. Co. v. Energy Ins. Mut. Ltd., 2014 WL 4450467, at *6 (E.D. Mo. 2014). However, the central issue in Debtor's adversary case is Litostroj's alleged breach of contract, an area of law where Canadian and United States courts are similar. In re I.E. Liquidation, 2009 WL 1586706, at * 12; Aristech Chem., 138 F.3d at 628–29. Therefore, the public interest in a court applying the law it is most familiar with weighs in favor of Canadian litigation, but only slightly.

The court will also consider the enforceability of any potential Bankruptcy Court judgment against Litostroj in Canada. Debtor spends a significant portion of its brief arguing that a United States judgment is enforceable in Canada, while Litostroj spends a significant portion of its brief arguing the opposite. While the court need not rule on future enforceability, the lengthy and legitimate arguments of both parties illustrate a potential for additional litigation. This factor weighs against transfer.

9

Finally, the court will discuss the harm litigation delays will invariably have on a specific subset of what was at one time twenty-five Ideal retirees born between the years of 1914 and 1935, making them between one hundred one and eighty years old. These retirees need a resolution as quickly as possible, as many are unable to wait for the conclusion of the Canadian litigation before receiving benefits earned through years of hard labor. After Atlantic Marine, it is unclear if retiree interests are a public or private interest factor. Even assuming retiree benefits are a public interest factor the Bankruptcy Court may evaluate, Debtor has failed to show the exceptional circumstances needed to override a valid and enforceable forum selection clause. While the court is very sympathetic to the financial difficulties the Canadian litigation is imposing on the twenty-five Ideal retirees, their interests do not overwhelm the sum of the above factors strongly favoring Canadian litigation. The Supreme Court's enunciation was clear and leaves little room for ignoring an explicit, valid forum selection clause.

## Conclusion

Based on the above, Debtor has failed to show the exceptional circumstances necessary to override a valid and enforceable forum selection clause. Consequently, Debtor's amended motion to reinstate counts in the Bankruptcy Court is **DENIED**. An order will be entered simultaneously with this opinion.

It is so ordered.

#     #     #

**Service List**:

**I.E. Liquidation, Inc.**
300 E First Street
Mansfield, OH 44902

**Jeffrey T. Golenbock**
Golenbock, Eiseman, Assor, Bell & Peskoe
437 Madison Ave
New York, NY 10022

**Harry W. Greenfield**
600 Superior Ave E
Suite 1400
Cleveland, OH 44114

**Dov Frankel**
Taft Stettinius & Hollister LLP
200 Public Square
Suite 3500
Cleveland, OH 44114

**Peter R. Morrison**
Squire Patton Boggs (US) LLP
4900 Key Tower
127 Public Square
Cleveland, OH 44114

11